# WILLIAM WINNER

## *vs.*

# STATE OF MARYLAND.

*Prosecution for Assault—Self-Defense—Evidence—Cross-Examination.*

On a prosecution for assault by shooting, there being an issue as to self-defense, evidence that during an hour or two before the shooting the prosecuting witness had been engaged in disorderly and dangerous conduct, including the threatening use of a pistol, toward other persons, which the defendant witnessed, was admissible in support of defendant's theory that he had reasonable ground for believing himself or his family in danger of serious bodily harm when the prosecuting witness approached in the menacing manner described by defendant's witnesses.                                                pp. 684-689

Although threats by the prosecuting witness, made previous to the shooting, to kill every "union man," were not communicated to defendant, evidence thereof was admissible to show the former's attitude towards defendant, who was a "union man," and as tending to prove that he approached defendant with hostile and dangerous intent.          !          p. 689

That, on an issue as to self-defense in a prosecution for assault by shooting, the prosecuting witness was not permitted to be asked on cross-examination whether he was acting in a peaceable manner during a period of several hours before the assault, was not ground for objection on appeal, he having already been closely cross-examined as to his conduct prior to the shooting, and having testified fully in regard thereto.          p. 689

That the court refused to permit defendant to be asked what was his state of mind when he saw the prosecuting witness approaching, was not ground for objection on appeal, in view of the allowance of the next question asked of defendant, which was as to why he shot the prosecuting witness, to which his

reply was: "because I thought that he was going to shoot my wife or some of my children," this being a sufficient statement of his apprehension and of the reason for his act to meet the purpose of the preceding question.                                    p. 689

*Decided January 31st, 1924.*

Appeal from the Circuit Court for Allegany County (Doub, J.).

Criminal proceeding against William Winner. From a judgment of conviction, defendant appeals. Reversed.

The cause was argued before Boyd, C. J., Thomas, Pattison, Urner, Stockbridge, Adkins, and Offutt, JJ.

*William C. Walsh* and *John M. Henry,* with whom was *Charles Z. Heskett* on the brief, for the appellant.

*Alexander Armstrong, Attorney General,* with whom were *Lindsay C. Spencer, Assistant Attorney General,* and *Fuller Barnard, State's Attorney for Allegany County,* on the brief, for the State.

Urner, J., delivered the opinion of the Court.

The indictment in this case charges, in separate counts, that the appellant assaulted Robert Hawkins with intent to kill, to maim, to disfigure and to disable, and there is a final count charging assault and battery. The trial resulted in conviction on the last count. A sentence of imprisonment in the House of Correction for the period of twelve months was imposed. In the course of the trial thirteen exceptions were taken to rulings on the admissibility of evidence, and these present the only questions to be decided on appeal.

The assault was committed on the afternoon of Sunday, March 25th, 1923. The appellant, standing with his wife and children on the porch in the rear of his dwelling, in the

village of Klondyke, in Allegany County, fired a shot-gun at Hawkins, who was in an alley about fifty-five feet distant, the shot taking effect mainly in his right leg. It was testified by Hawkins, and other witnesses for the State, that he had gone to the alley, across a lot which it separated from the appellant's premises, because of insulting and challenging remarks addressed to him by a man named Edward Gwinn, and that when he reached the alley and was accosting Gwinn there, the appellant, without being previously involved in the altercation, declared his intention to shoot Hawkins, and at once proceeded to carry the purpose into execution. According to testimony for the defense, the gun was fired while Hawkins, without provocation from the appellant, was making a hostile demonstration and homicidal threats against him and his family, and was apparently about to draw a pistol from his hip pocket and to climb the wire fence between the alley and the appellant's lot. There was thus an irreconcilable conflict in the evidence as to whether the appellant or the prosecuting witness was the aggressor.

The most important exceptions refer to unsuccessful efforts of the defense to prove that during a period of an hour or two before Hawkins was shot he had been engaged in disorderly and dangerous conduct, including the threatening use of a pistol, toward other persons, which the appellant witnessed, and had made certain threats to kill which had not come to the appellant's knowledge. In so far as the proffered evidence would have tended to prove prior acts of violence by Hawkins which the appellant had observed, it was designed to support his theory that he had reasonable ground for believing himself or his family to be in danger of serious bodily harm when Hawkins approached in the menacing manner which the witnesses for the defense described. The excluded testimony as to the threats which the appellant did not hear would have been to the effect that Hawkins, about an hour and a half before he was shot, de-

clared a purpose to kill every "union man" in the village. It was proved that the appellant was a union miner. The proof of the threats was intended to reflect upon the question as to whether Hawkins or the appellant committed the first hostile act on the occasion with which the case is specially concerned. In refusing to admit the testimony to which the principal exceptions relate, the trial court expressed the view that evidence as to prior threats and acts of violence of the prosecuting witness toward others, on the afternoon of the shooting, was irrelevant, and that the material inquiry was whether he made any such hostile demonstrations against the appellant at the time and place of the assault alleged in the indictment.

In *Jenkins* v. *State*, 80 Md. 72, where the defendant was tried for an assault with intent to kill, the defense was not allowed to prove that the prosecuting witness, to the defendant's knowledge, had threatened another person with a gun during the preceding year. There was no evidence in that case of any overt hostile act against the defendant by the person assaulted. For that reason it was also held that evidence as to a prior threat by the prosecuting witness against the accused himself was not admissible. In this case there is testimony tending to support the theory of self-defense. The presence of such testimony entitled the appellant to the benefit of certain rules of evidence which would not otherwise be available. It was competent for him to prove his knowledge of facts which would have a reasonable tendency to justify his asserted belief as to the existence of a deadly purpose in the overt acts of Hawkins, to which witnesses for the defense testified. It was for the jury to decide, upon the evidence in the case,, whether the appellant was in fact being approached by Hawkins with real or apparent hostile and dangerous intent, but the question as to the admissibility of the testimony we are now considering must be determined upon the theory that the evidence of such action, por-

tending serious and possibly fatal injury, might be accepted as true.

The same considerations, of course, apply to the present question as would be pertinent if the wound inflicted by the appellant had been mortal and he were under indictment for a homicide. *Stockham* v. *Malcolm,* 111 Md. 622. In reference to similar questions in cases of that nature it is said in 13 *Ruling Case Law,* 920, that "on the issue whether or not the accused had reasonable ground to believe himself in imminent danger, he may show his knowledge of specific instances of violence on the part of the deceased." When it is material to prove that the accused had information as to the dangerous disposition of the person by whom he is said to have been attacked, there is no valid reason why such knowledge may not be proved to have been acquired by actual observation as well as by general repute. Previous acts of violence by his adversary, especially if committed recently, which the defendant had witnessed, might have an even stronger influence on his mind than would be produced by knowledge of the assailant's reputation for violence. While the existence of such a reputation could not be shown by evidence of specific acts, yet belligerent and dangerous conduct of his opponent which the accused has observed should be provable upon the question as to the reasonableness of his apprehension of serious injury as a possible excuse for the measures of resistance which he adopted.

In 3 *Bishop's New Criminal Procedure* (2nd Ed.), 1599, it is said, upon the authority of many cases there cited: "Under a claim of self-defense, where the necessity for the defendant's resorting to it should be judged of by the facts as they *appeared to him,* whatever they truly were, he may give in evidence whatever he knew of the character, prior conduct, threats or other utterances of the person with whom he was contending, which, not as showing that the man was bad, but that in the special instance and circumstances he

was dangerous, might reasonably have place among the considerations guiding his actions."

The case of *Sneed* v. *Territory,* 16 Okla. 641, as reported in 8 *Am. & Eng. Ann. Cases,* 354, is there discussed, in part, as follows: "In the reported case it is held that the defendant, for the purpose of showing his knowledge of the violent temper of the deceased and of the disposition of the latter to use his pistol on small provocation, may introduce evidence of a difficulty which occurred between the deceased and a third person a short time before the homicide and which the defendant witnessed. The court, however, expressly recognized the rule that character or reputation cannot be proved by specific acts, and carefully limits the admissibility of the evidence to the purpose of showing the defendant's knowledge of the disposition and character of the deceased. And so limited, the decision that the evidence is admissible is undoubtedly sound. The theory upon which it is held admissible is that it is competent to show the reasonableness of the defendant's apprehension of danger at the hands of the deceased."

The Supreme Court of Michigan, in the case of *People* v. *Harris,* 95 Mich. 87, decided that it was permissible for a defendant on trial for murder, under the plea of self-defense, to show not only the general reputation of the deceased for being quarrelsome, and having a violent temper, but also "instances or specific acts of violence within his knowledge, or coming under his own observation." Numerous cases to the same general effect are collected in a note to *State* v. *Feeley* (Mo.), in 3 L. R. A. (N. S.) 372.

In our opinion the proffered testimony as to the appellant's knowledge of violent demonstrations by the prosecuting witness just prior to the shooting charged in the indictment should have been admitted.

The rejected evidence relating to homicidal threats by Hawkins which were not communicated to the appellant would obviously not have been admissible to account for his

action in committing the assault for which he was tried. But it might have reflected upon the issue, in regard to which the testimony was conflicting, as to who was really responsible for the attack. The opinion of the Supreme Court in *Wiggins* v. *People,* 93 U. S. 465, includes this statement: "Although there is some conflict of authority as to the admission of threats of the deceased against the prisoner in a case of homicide, where the threats had not been communicated to him, there is a modification of the doctrine in more recent times, established by the decisions of courts of high authority, which is very well stated by Wharton, in his work on *Criminal Law,* sec. 1027: 'Where the question is as to what was deceased's attitude at the time of the fatal encounter, recent threats may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not communicated to the defendant. The evidence is not relevant to show the *quo animo* of the defendant, but it may be relevant to show that, at the time of the meeting, the deceased was seeking the defendant's life.' *Stokes* v. *People of New York,* 53 N. Y. 174; *Keener* v. *Georgia,* 18 Ga. 194; *Campbell v. People,* 16 Ill. 18; *Holler* v. *State,* 37 Ind. 57; *People* v. *Arnold,* 15 Cal. 476; *People* v. *Scoggins,* 37 Cal. 676." That language was repeated by the Supreme Court in the case of *Allison* v. *United States,* 160 U. S. 215.

In the opinion delivered by the United States Circuit Court of Appeals for the Eighth Circuit, in *Trapp* v. *Territory of New Mexico,* 225 Fed. 971, it was said: "It is the general rule that on the trial for a homicide uncommunicated threats are not admissible in evidence, because such threats cannot have had any influence upon the mind or intent of the defendant. But there is an exception to this rule as well established as the rule itself. It is that where the alleged crime was committed in a sudden affray, and there is a conflict in the evidence upon the question, and there is doubt which party fired the first shot, made the first assault,

or was the aggressor, uncommunicated threats of death or great bodily harm to the defendant, his father, or other near relatives he claims to be trying to defend, are admitted in evidence, not on account of their influence on the mind or intent of the defendant, but because they tend to prove the probability that he who made the threats, rather than his opponent, fired the first shot, made the first assault or was the aggressor." In support of that statement the opinion cited *Wiggins* v. *People,* and *Allison* v. *United States, supra,* and some of the other cases already noted, and also *State* v. *Felker,* 27 Mont. 451; *State* v. *Shadwell,* 26 Mont. 52; *State* v. *Hennessy,* 29 Nev. 320, 13 Ann. Cas. 1122; *Wood* v. *State,* 128 Ala. 27, 86 Am. St. Rep. 71; *Roberts* v. *State,* 68 Ala. 156, and *Wharton's Criminal Evidence,* sec. 751. The same principle was recognized, though found not to be applicable under the proof, in *Turpin* v. *State,* 55 Md. 462.

If, shortly before the event to which the indictment refers, the prosecuting witness in this case threatened to kill every union man in the village, that fact would be relevant to the question raised in the evidence as to whether he approached the appellant, a union minor, with hostile and dangerous gesture and intent, on the occasion of the assault which resulted in this prosecution. The testimony which was offered to prove such threats for that purpose should not, in our judgment, have been rejected.

The exceptions we have discussed were the first, second, fourth, sixth, and eighth to twelfth inclusive.

The third exception was taken because the prosecuting witness was not permitted to be asked, on cross-examination, whether he was acting in a peaceable manner during a period of several hours preceding the assault for which the appellant is indicted. The witness had been closely cross-examined as to his conduct prior to the shooting and had fully testified on the subject. An inquiry which invited his general characterization of the conduct which he had described in detail could not well have benefited the defense. In so far as it may

be supposed to have related to actions of the witness like those indicated by the exceptions already considered, it is subject to the conclusions we have stated.

The question raised by the fifth exception is obviated by the subsequent admission of uncontradicted proof of the fact to which it refers.

The seventh exception relates to the refusal of the court below to allow the appellant to be asked what was the state of his mind when he saw Hawkins approaching. The next question propounded to the appellant, which was: "Why did you shoot Hawkins?" was allowed to be answered, and the reply was: "Because I thought he was going to shoot my wife or some of the children." This was a sufficient statement of his apprehension, and of the reason for his act, to meet the purpose of the preceding question.

The thirteenth exception has reference to testimony offered by the State which was clearly admissible evidence in rebuttal.

Because the rulings with which this opinion has been mainly concerned have had the effect of excluding evidence which we think the appellant was entitled to introduce, we find it necessary to reverse the judgment and remand the case for a new trial.

A motion was filed to dismiss the appeal on the ground that the record was not transmitted to this Court within the prescribed period. The affidavits filed in opposition to the motion sufficiently explain and excuse the delay, to justify the view that the appeal ought not to be dismissed. The motion is accordingly overruled.

*Judgment reversed and new trial awarded.*