GUNTHER *v.* STATE

[No. 241, September Term, 1961.]

406

*Decided April 19, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HORNEY, MARBURY and SYBERT, JJ.

*Patrick L. Rogan, Jr.,* with whom was *Vaughn E. Richard-
son* on the brief, for the appellant.

*Robert S. Bourbon, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General,* and *Alfred T.
Truitt, Jr., State's Attorney for Wicomico County,* on the brief,
for the appellee.

HORNEY, J., delivered the opinion of the Court.

In appealing his conviction of murder in the second degree,
the defendant-appellant (Garnell Gunther) primarily chal-
lenges the correctness of the instructions of the trial court with
respect to the law of self-defense.

Shortly before midnight on July 8, 1961, the defendant shot
and killed his brother-in-law with a rifle. That he did so was
not denied: instead the defendant claimed that he killed in self-
defense.

Sometime during the night before, the husband (as he had
done on several other occasions) had beat his wife to such
extent as required her to remain in bed for most of the next
day. She had, however, gotten a message to her brother to
come get her. After he had finished working for the day, the
brother went to the house occupied by his sister three times.
On the first occasion (between 7:30 and 8:00) the husband
was home and the defendant stayed only long enough to as-
certain that his sister wanted him to help her move her be-

longings to the home of their mother. On the second occasion (about 9:30) the husband was not there, but the automobile the defendant had borrowed had a flat tire and his sister went with him to get it fixed. On the third occasion (between 11:30 and midnight), the husband had come back and was apparently watching for his wife to return. As the wife got out of the automobile and closed the door, the husband reopened the door, "jumped in on" the defendant and raised his hand. Simultaneously, the defendant reached for a rifle he had on the back seat, pointed it at the intruder and fired it twice—once as his brother-in-law was entering the automobile and again as he was leaving it. The victim of the shooting died before he reached the hospital. The defendant fled, but returned early the next day and surrendered to the police.

The State produced other testimony to show that neither the deceased nor the defendant had spoken to the other on the evening of the homicide; that the victim had never threatened the defendant on any prior occasion; and that the defendant had placed the rifle on the back seat before going to the house the second time.

But there was also testimony on behalf of the defendant to the effect that he knew of the several beatings that his sister had received at the hands of her husband; that on one occasion the beating was so severe that she had sworn out a warrant for his arrest; and that on another occasion a friend took a shotgun away from the husband when he threatened to kill his wife. The defendant had also been told by his sister that her husband always carried a gun when he went out in his automobile. And, on behalf of himself, the defendant testified that he had seen his brother-in-law carrying a gun several months before the killing; that he had been informed by a friend of the brother-in-law that he "always carried a gun" and that if "anything would happen around him he would grab his shotgun"; and that at the time of the killing he could not tell whether the deceased "had a gun or not" and had "assumed he had a shotgun or some kind of a weapon."

In an information he had requested in lieu of an indictment the defendant was charged with murder. The plea of the de-

fendant that he was not guilty was based on the theory that he had killed the deceased in self-defense.

### 1. Exceptions To Instructions.

At the close of the case, the trial court instructed the jury generally as to the law of self-defense, but even though the defendant had requested a more comprehensive instruction, the court refused to give it. The defendant does not claim that the instructions were incorrect as far as they went, but he does contend that the charge as given fell far short of adequately and fairly covering the law of self-defense. On this point, the defendant excepted to the charge because the court, on the evidence in this case, should have informed the jury:

> (i) That the defendant had a right to arm himself in anticipation of an assault and the privilege of going wherever he had a lawful right to go;
>
> (ii) That it (the jury) could consider evidence of the violent and dangerous character of the deceased known to the defendant in determining the reasonableness of the defendant's apprehension of danger, as well as whether the deceased or the defendant was the aggressor; and
>
> (iii) That it (the jury) should find the defendant not guilty if, on the whole of the evidence, it had a reasonable doubt as to whether or not he acted in self-defense.

In further excepting to the instructions, the defendant contends that it was error for the court (iv) to instruct the jury in the language of *Chisley v. State,* 202 Md. 87, 105, 95 A. 2d 577 (1953), that "[t]he law presumes all homicides to be committed with malice aforethought and to constitute murder," after this Court had expressly modified the statement in *Davis v. State,* 204 Md. 44, 51, 102 A. 2d 816 (1954), and again in *Bruce v. State,* 218 Md. 87, 98, 145 A. 2d 428 (1958).

It may be that the jury believed that the defendant had not killed his brother-in-law in self-defense, but as there was some evidence that the defendant had acted in defense of himself and that the deceased had the characteristics of a violent

and dangerous person, we think it clear that the lower court should have given a more explicit instruction with respect to the law of self-defense than it did in this case, and that the failure to inform the jury more fully, as to such of the essential elements of self-defense as were applicable to the circumstances in this case, was prejudicial error.

(i)

Specifically, we think the court, instead of informing the jury that if the defendant prepared for and provoked the affray he could not assert the right of self-defense, should have advised the jury that if it believed that the defendant was not seeking a fight with his brother-in-law, but on the contrary was apprehensive that he might be attacked by him, then the defendant, under such circumstances, would have a right to arm himself in anticipation of the assault. See *Perkins on Criminal Law*, at p. 48, where the author, in citing *State v. Bristol*, 84 P. 2d 757 (Wyo. 1938), says that "[o]ne who is not in any sense seeking an encounter, but has reason to fear an unlawful attack upon his life, does not forfeit his privilege of self-defense merely by arming himself in advance." See also *Gourko v. United States*, 153 U. S. 183 (1894) ; *Thompson v. United States*, 155 U. S. 271 (1894) ; Hochheimer, *Crimes and Criminal Procedure* (2nd ed.), § 344; Wharton, *The Law of Homicide* (3rd ed.), § 324; 30 Corpus Juris, *Homicide*, §§ 222 and 223; and the cases cited in 40 C.J.S., *Homicide*, § 120, fn. 87. And see Code (1957), Art. 27, § 36 (b), where the carrying and wearing of a concealed weapon by any person "as a reasonable precaution against apprehended danger" is expressly excepted from the provisions of the statute regulating concealed weapons.

On the subsidiary point that the right of the defendant to go wherever he legally had a right to go was not abridged by the fact that he might be attacked, see *Barnes v. State*, 93 So. 2d 863 (Fla. 1957). And cf. *Torrez v. State*, 204 S. W. 228 (Tex. Cr. 1918), and *Lett v. State*, 56 So. 5 (Ala. 1911). See also 26 Am. Jur., *Homicide*, § 148, where it is said that "[n]o generally recognized rule of law deprives one who expects an attack to be made upon him of going places where he otherwise has a legal right to go."

### (ii)

It is also clear that the lower court should have instructed the jury that it could consider such evidence as was produced which tended to show that the defendant knew of the violent and dangerous character of the deceased. In this case, where there was evidence that the turbulent characteristics of the deceased and certain specific acts of violence were known to the defendant as well as evidence of an overt act on the part of the deceased against the defendant, the jury should have been advised to consider such evidence in determining whether the defendant was apprehensive of danger and in determining who was the aggressor. See *Jones v. State,* 182 Md. 653, 35 A. 2d 916 (1944), where it was said (at p. 659) that "[i]t is competent for * * * [a defendant] to prove his knowledge of facts which would have a reasonable tendency to justify his asserted belief as to the existence of a deadly purpose in the overt acts of the deceased * * * [and it] is for the jury to decide upon the evidence in the case whether the defendant was, in fact, being approached by the deceased with real or apparent hostile and dangerous intent." See also 1 *Wharton's Criminal Evidence* (12th ed.), § 228; 26 Am. Jur., *Homicide,* § 344. Cf. *Evans v. United States,* 277 F. 2d 354 (D. C. Cir. 1960). And for other cases in point in this area see the Annotation: *Reputation for Turbulence-Admissibility,* 64 A.L.R. 1029.

### (iii)

But we do not agree that the jury should have been told that it could find the defendant not guilty if, on the whole of the evidence, it had a reasonable doubt as to whether or not the defendant acted in self-defense. Apparently the defendant is contending that when a defendant pleads self-defense the State must prove beyond a reasonable doubt that the defendant did not act in defense of himself. Such is not the law. On the contrary, the defendant has the burden of producing evidence to support this affirmative defense. Cf. *Bruce v. State, supra,* at pp. 96-97.

It seems clear that in this State a defendant is not required to establish matters of defense or mitigation beyond a rea-

sonable doubt. Cf. *Ferraro v. State,* 200 Md. 274, 281, 89 A. 2d 628 (1952). But that does not mean that the defendant is relieved from proving self-defense by a preponderance of the evidence or that the State is required to prove beyond a reasonable doubt that the defendant did not act in self-defense. However, since all of the evidence in a criminal case must be considered together, the trier of the facts should not weigh the evidence relating to self-defense and determine from that alone whether there is a reasonable doubt of guilt. See *Basoff v. State,* 208 Md. 643, 119 A. 2d 917 (1956).

It is thus apparent that the burden of proving self-defense to the satisfaction of the jury or the court (as the case may be) is on the defendant, but, it is likewise clear that if, upon all of the evidence, a reasonable doubt exists as to the guilt of the defendant, the trier of the facts ought to acquit him. Cf. *Floyd v. State,* 205 Md. 573, 109 A. 2d 729 (1954).

(iv)

The contention here is that it was error for the court to instruct the jury, without more, in the language of the *Chisley* case, *supra.*

A reading of the instruction in the case at bar discloses that the court, in summing up and in repeating that the jury could find any one of five possible verdicts, did advise the jury, in the language of the *Chisley* case (at p. 105) that "[t]he law presumes all homicides to be committed with malice aforethought and to constitute murder." But further on in the same paragraph, obviously with the intention of complying with the modification suggested by this Court in the *Davis* and *Bruce* cases, both *supra,* the lower court also advised the jury that "[m]alice has been defined, in this connection, as the intentional doing of a wrongful act to another without legal excuse or justification." It is a fact, however, that the court, in repeating the different degrees of homicide and the possible verdicts that could be found by the jury, overlooked stating at that time that a verdict of "not guilty" as also a possibility.

Since this case must be retried in any event, we see no reason to discuss here whether or not this contention of the defendant is also cause for reversal. But we do deem it expedient

to point out *again* that when a trial court has occasion to cite or refer to that part of the *Chisley* case, stating that "[t]he law presumes all homicides to be committed with malice aforethought and to constitute murder," the citation or reference should be so modified by way of preface or conclusion, as to state that "in the absence of justification, excuse or some circumstances of mitigation, the law presumes all homicides to be committed with malice aforethought and to constitute murder," or by words to that effect.

## 2. Objection To Remarks.

The final contention of the defendant is that prejudicial error was committed, when, during the direct examination of the defendant with regard to the beatings that had been inflicted on his sister, the court remarked that "this alone is no defense" and that "it was not binding on the jury."

Since the case must be remanded for a new trial, we deem it unnecessary to discuss this contention.

For the reasons stated herein, the judgment must be reversed and the case remanded for a new trial.

> *Judgment reversed and case remanded for a new trial; the costs to be paid by the county commissioners of Wicomico County.*