## WALTER NATHANIEL BOWYER *v.* STATE OF MARYLAND

[No. 338, Initial Term, 1967.]

reviewed the evidence therein and find it was sufficient to sustain those convictions.

*Decided November 21, 1967.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Blair H. Smith* and *Joseph A. DePaul* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were

*Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Howard S. Chasanow, Deputy State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Walter Nathaniel Bowyer, the appellant, complains of a conviction in the Circuit Court for Prince George's County, Judge William B. Bowie presiding with a jury, under an indictment for manslaughter. The allegations of error involve rulings on evidence and the conduct of the prosecutor.

## I The Facts

On April 13, 1966, at approximately 11:30 P.M., the deceased, Carl Utgoff, and his friend Matselboda, drove into the public parking lot of Ourisman Chevrolet Company, in Prince George's County, Maryland, for the purpose of obtaining a Chevrolet automobile which was owned by Matselboda, and which had been left at the Ourisman Company for repairs and service. Matselboda claimed that he had made arrangements with the company earlier in the day to pick up his automobile after the company had closed. Matselboda had made similar arrangements on at least two prior occasions.

Shortly after the men entered the lot, a guard on duty at the automobile company, John Proctor, approached Matselboda and inquired into his activity. The guard had spoken with Matselboda on the other occasions that Matselboda had obtained his automobile after hours, and acknowledged recognizing him. After being told that Matselboda was getting his car, Guard Proctor went inside of the building and spoke to his superior officer, Bowyer, the Appellant, who was also on duty as a guard, and both came outside again to discuss the situation further. Bowyer, according to the State's evidence, also knew Matselboda and acknowledged the same when he spoke to him. Bowyer denied recognizing Matselboda at the time. The deceased, however, was admittedly unknown by Bowyer.

A conflict in the testimony exists as to what then transpired. Bowyer claimed in essence that he and Guard Proctor advised Matselboda and the deceased that they could not take the ve-

hicle from the premises without a written release slip. Matselboda, to the contrary, denied that he was asked for a release slip or was told that he could not take the car. He claimed that both of the guards knew him, had seen his bill of sale for the car on at least one prior occasion, and that the guards were aware of his ownership of the vehicle.

The evidence further showed that after speaking with the guards, Matselboda got into a Pontiac automobile and started driving out of the lot. This was the vehicle which had transported Matselboda and the deceased to the scene. Simultaneously, Utgoff, the deceased, backed the Chevrolet automobile out of its parking place, when he was stopped by Bowyer. Matselboda testified that he was waiting in the Pontiac at a point at least thirty-five feet distant from where Bowyer had stopped Utgoff. He had clear vision but was unable to overhear the conversation which lasted for one or two minutes. He related that as Utgoff opened the car door, Bowyer drew his revolver, and a struggle ensued—resulting in the death of Utgoff. The appellant claimed that the gun was discharged accidentally while he was in the act of defending himself.

The deceased had no weapon. He was shot in the left temple, the bullet traversing his brain from left to right in a nearly straight horizontal line. The deceased weighed 182 pounds, and was 6' 7" in height but was described by a doctor as muscular. Bowyer weighed 185 pounds and was 5' 10" in height. Deceased was 23 years of age. Bowyer was 28. A medical witness who performed an autopsy on the deceased related that no powder burns were found on the victim, and that if the fatal bullet had been fired from a distance of less than eight inches, there would probably have been powder burns, but in view of the amount of blood, the burns may not have been visible.

Bowyer admitted that his revolver was fired "double action" i.e. it was not cocked by hand, but by a pull of the trigger. He denied consciously pulling the trigger. He also admitted drawing his weapon when the door of the Chevrolet clicked and Utgoff began to get out of the car. He was struck only one blow by the deceased prior to the time the shot was fired. During the course of the struggle Guard Proctor came to Bowyer's assistance, but was told to get back by Bowyer.

No challenge is here made concerning the sufficiency of the evidence to support the conviction.

## II Rulings on Evidence

The first error alleged was the refusal of the trial court to permit Bowyer, the appellant, to answer a question from his counsel: "What was your state of mind at this time?" The record discloses, however, that the same identical question had been asked and answered by the same witness immediately prior to the time objection was sustained to the question. Such rulings on evidence are clearly within the discretion of the trial court and we see no error. *Grammer v. State,* 203 Md. 200, 100 A. 2d 257 *cert. denied* 347 U. S. 938, 74 S. Ct. 634, 98 L. Ed. 1088 (1963), *Koprivich v. State,* 1 Md. App. 147, 228 A. 2d 476.

Bowyer also alleges error because the trial court refused to permit the introduction into evidence of notes made by a police officer who interviewed the appellant immediately after the crime was committed. The trial judge examined the notes and found that they were for the most part illegible and would have to be interpreted. The officer was permitted to orally state what Bowyer had told him, using the notes to refresh his memory. We see no error.

Bowyer also alleges error in the admission of one photograph of the corpse. We have examined the photograph and we see nothing that would tend to inflame the jury. It served the purpose of showing the location of the wound and the general build of the deceased; both of which were important matters at the trial. See *Perry v. State,* 234 Md. 48, 197 A. 2d 833, *Stewart v. State,* 1 Md. App. 309, 229 A. 2d 727.

Bowyer complains that he was precluded from showing the "quarrelsome and belligerent" nature of the deceased. James Clendening, the service manager of Ourisman Chevrolet, testified as follows:

"Q. When did Mr. Utgoff come to the scene?
A. Mr. Matselboda—he came through the door of the Service Department and Mr. Matselboda called him over and told him that I would not give him an adjustment on the tire and said, 'What do you think of

this?' And Mr. Utgoff said, 'Well, you know what I would do about it.' So, with the conditions that existed, it was at that time—point I turned and left both gentlemen standing there.

Q. 'Conditions existing at that point.'—What do you mean?

Mr. Chasanow: Objection. It calls for a conclusion.

The Court: Sustained."

Later Charles Thompson, the Ourisman Chevrolet Sales Manager, testified that the deceased was unhappy because of the delay in the delivery of a new car, and that he became "rather boisterous and loud on several occasions." The court sustained objections to a question which would have elicited what was meant by "boisterous" and to a second question as to whether or not he was "threatened." There was no evidence that the accused was aware of either of the incidents at the time of the homicide, but both incidents were recent.

We will discuss first the question concerning the threats. This issue is clear despite the absence of a proffer. Where, as here, there is some evidence of self defense and where, as here, there is also some question as to who was the aggressor, prior threats are sometimes admissible into evidence in cases of homicide and in cases of assault and battery. Maryland has permitted threats against the accused, as opposed to threats against others, to be introduced into evidence whether the accused knew of them at the time of the homicide or not, *Turpin v. State,* 55 Md. 462, *Winner v. State,* 144 Md. 682, 125 A. 397. Maryland has also permitted the use of threats against others where the accused was aware of them at the time of the homicide. *Jones v. State,* 182 Md. 653, 35 A. 2d 916. In both situations Maryland follows the general rule, *1 Wharton's Criminal Evidence* (Anderson's 12th Edition) §199, 98 A.L.R.2d 6 (Homicide) 98 A.L.R. 2d 195 (Assault and Battery). We know of no authority that permits the use of threats against others when such threats are not known to the accused at the time of the affray. We do not think the use of such evidence should be extended, and see no error in the ruling of the trial judge in this regard.

Bowyer's specific complaint on this question is that he was

prohibited from showing the "quarrelsome and belligerent" nature of the deceased. This does not seem to be synonymous with "dangerous character" or "quick impulsive bloodthirsty man," as used by the authorities in *Jones v. State, supra* and *1 Wharton's Criminal Evidence* (Anderson's 12th Edition) § 199. See also *Gunther v. State,* 228 Md. 404, 179 A. 2d 880. Since there was no proffer of the answers to the questions: (1) "Conditions existing at this point"—What do you mean?" or (2) to the questions concerning the meaning of "boisterous" the issue is not properly raised and we are unable to make any ruling thereon, *Brown v. State,* 1 Md. App. 571, 232 A. 2d 261.

### III (Alleged Misconduct of the Prosecutor)

Bowyer complains of misconduct of the State's Attorney in misstating the law of self-defense to the jury. The first concerns a question to a witness.

> "Q. I want it clearly understood, you have no right to shoot a man even if you have to take a beating, as long as he is not armed? That is your understanding of it?
> A. If I have to take a beating?"

The next two are in closing arguments to the jury:

> "I don't want to think this is a deliberate act, he deliberately pulled that trigger, but I don't know what else to think. I hope, when you all go back to deliberate, your twelve minds can do it. My one can't. It's in evidence. Test it out, figure it out, and I hope you can come to a conclusion."
> "The law says, and rightfully so, you have got to take a punch in the mouth rather than kill someone. We don't have the death penalty for assault and battery. If it's a question of you getting a bloody nose, getting hit or getting hurt, you don't kill to prevent it. There is redress for it; you have a right to use reasonable force, but you don't have a right to kill."

There was no objection to the question or to the argument, therefore, under Maryland Rule 1085 we are precluded from

considering the matter in the absence of clear error. While it may well be that the State's Attorney's explanations of the law of self-defense is not in accordance with the law of Maryland as set out in *Crawford v. State,* 231 Md. 354, 190 A. 2d 538 and in *Gunther v. State,* 228 Md. 404, 179 A. 2d 880, we do not consider them sufficiently incorrect to constitute clear error. It should be noted that Maryland Rule 756e specifically authorizes counsel to argue law to the jury contrary to the instructions of the court, and that the Maryland Constitution, Art. 15, § 5, makes the jury the judges of the law as well as the fact.

Bowyer also alleges misconduct of the State's Attorney in offering the photograph of the corpse heretofore referred to. Since we have ruled that the photograph was admissible, obviously we find no misconduct on the part of the State's Attorney in offering it. Bowyer also alleges misconduct of the State's Attorney in cross examining him by comparing the Pinkerton Rules for handling firearms with the F.B.I. rules. There was no objection below and we can see no error if there had been objection. He also alleges the State's Attorney was guilty of misconduct because he complained to the court about where a witness was required to sit in the courtroom. Here, too, there was no objection, but our examination of the record fails to show how Bowyer could have been prejudiced thereby.

*Judgment affirmed.*
*Appellant to pay costs.*