RALPH CARL CARDER, JR. *v.* STATE
OF MARYLAND

[No. 44, September Term, 1967.]

532

[black redacted block]

*Decided December 17, 1968.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*C. Orman Manahan* for appellant.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Marvin H.*

*Anderson, State's Attorney for Anne Arundel County,* and *Cornelius F. Sybert, Jr., State's Attorney for Howard County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Ralph Carl Carder, Jr., was tried in the Circuit Court for Howard County by a jury, Judge (now Chief Judge) James Macgill presiding, for the murder of his infant daughter, Brenda Jane Carder. On February 28, 1964, the jury returned a verdict of guilty of murder in the first degree without capital punishment and appellant was sentenced to life imprisonment in the Maryland Penitentiary. On March 1, 1966, Judge Macgill granted appellant a belated appeal to this Court.[1]

Appellant submits six questions to be decided by this Court on appeal. They are as follows:

1. Did the refusal of the trial court to include in the *voir dire* certain questions suggested by appellant amount to error?
2. Were the verbal admissions or confessions made to the witnesses, Mr. Offenbacker and Corporal Greffen, voluntarily made?
3. Did the principles enunciated in the case of *Miranda v. Arizona* apply as to the verbal admissions or confession made to the witnesses, Mr. Offenbacker and Corporal Greffen, when on its face the conviction appeared to have become final, when it did not become final through ordinary judicial processes?
4. Did the oral admissions or confessions of the accused meet the test of voluntariness in view of the appellant's physical condition at the time of the alleged admissions or confessions?
5. Did the principles enunciated in the case of *Schowgurow v. State* apply even though on its face the conviction had become final, when it had not become final through the ordinary judicial processes?

---

1. See *Carder v. Warden,* 3 Md. App. 309, 239 A. 2d 143 (1968) for a history of the prior proceedings in the case.

6. Did the trial court err in admitting in evidence photographs concerning the alleged crime?

The jury sitting in the court below, as trier of the facts, could find from the evidence that on March 14, 1963, the appellant returned from work to his home in Baltimore City and found his young wife, Ruth Naomi Carder, writing a love letter to his cousin, in which was enclosed a check for $5.00. A quarrel ensued and it was agreed that they would take a drive in the family car to discuss the future of their marriage. The appellant owned a high-powered rifle which he used for hunting and protection while working at a filling station. He got the gun, wrapped it in a blanket, and was seen entering the family car with his wife and two small daughters, Brenda Jane and Barbara Sue. After driving for some two hours, he stopped the car in a sparsely inhabited spot in Anne Arundel County off Furnace Road. A discussion ensued between him and his wife during which she demanded the return of the letter he had in his possession. When he refused, she picked up the gun from under the front seat and, according to his testimony, shot him through the chest. Appellant then got possession of the rifle and shot his wife through the head, inflicting a mortal wound. He then shot each of the infant children who were seated in the rear seat of the automobile, inflicting mortal wounds upon each. Following the shooting of the infant children, appellant shot himself through the mouth, taking away a large part of his jawbone.

Some two hours later, at approximately 4:40 p.m., he was discovered near the highway some sixty feet from the automobile by passing motorists, one of whom was the civilian witness, George J. Offenbacker. When he first observed the appellant he was in a kneeling position some 10 to 15 feet off Furnace Road, with his head between his knees. He walked over to appellant, who was then lying on his stomach, and asked him what happened. Appellant stated that he had shot his wife and two children and had then shot himself. The witness walked back to where the car was parked and observed, inside the automobile, appellant's wife and one child and a coat on the back seat. He observed a rifle lying behind the automobile. He

then walked back to the appellant and put a handkerchief on his back where he was bleeding. The State Police had been called and arrived some 3 minutes later. The first to arrive was Trooper Weaver. He examined the appellant and found that a portion of his jawbone had been shot away and that there was also a wound in his back just below his left shoulder blade. He then proceeded some 60 feet back to where the automobile was parked. Upon looking in the car, he observed a white woman in the front seat with the top portion of her head missing. On the back seat were two children, both of whom were dead. He also observed a Winchester rifle lying 15 feet to the rear of the parked car. Appellant muttered that there was a note in his wallet which would explain everything. The letter referred to was in his wallet and was the same letter that his wife was writing to his cousin when appellant returned home to get his work shoes. Corporal Charles F. Greffen, accompanied by Trooper Lawrence, arrived at approximately 4:55 p.m., at which time there were present Trooper Weaver and George Offenbacker. He observed appellant lying in a dirt road some 30 yards off Furnace Road. He was suffering from a wound to his face and a wound in the left side of his chest. He walked over to appellant and asked him his name, to which he replied his name was Ralph Carder. He asked him if he thought he was going to die and he said, "Yes." He then asked him "if he shot the people in the car", to which appellant replied, "Yes."

Appellant took the stand in his own behalf. He testified that his wife asked for the letter back when he threatened to show it to others. He refused and she threatened to shoot him. He replied, "Shoot and be damned." She apparently fired the gun, shooting him in the chest. He then got possession of the gun and shot her and afterwards shot himself. He testified that he had no independent recollection of how the two young children were shot.

I

Appellant's first contention is that the trial court committed error in refusing to propound to the jurors certain questions upon *voir dire* submitted by appellant.

The trial judge on his own initiative propounded the following questions to the prospective jurors:

(a) "Have you formed or expressed any opinion as to the guilt or innocence of the accused?

(b) "Do you feel you could render a verdict in this case based on the law and the evidence, and the law and the evidence alone, uninfluenced by anything you may have heard or read about this case?

(c) "Do you feel that your mind is perfectly free and clear from all prejudice or bias of any kind that might prevent you from rendering a proper verdict?

(d) "Have you any conscientious scruples against inflicting capital punishment?"

Counsel for appellant then submitted a list of sixteen proposed questions to be propounded to the prospective jurors. From these sixteen questions, the court propounded the following five:

(1) "Have any members of the panel ever read about the pending criminal case in the newspapers?

(2) "Have any members of the panel ever heard about the pending criminal case by radio or television?

(3) "Have any members of the panel discussed or participated in discussions in their home or community regarding the criminal offense alleged by the State to have been committed by Ralph Carder?

(5) "Has any of the immediate family, a relative or close personal friend of any of the members of the jury panel ever been a homicide victim?

(13) "Are any members of the panel, their immediate family or relatives now or ever been employed by any law enforcement agencies, whether County, Federal or State, including but not limited to the office of the Prosecutor?"

To each of the above questions, the respective jurors answered in the negative.

The appellant excepted to the refusal of the trial judge to ask

the following three questions requested by him from the list of sixteen submitted. These questions were:

(9) "Do the members of the panel understand that if, from the evidence presented, it is shown that at the time of the alleged commission of the act of murder, that Ralph Carder did not know the nature and quality of the act he was doing, or if he did know, that he was not conscious that the act was one which he ought not to do, then the jury is to find that Ralph Carder is not guilty?

(10) "Do the members of the jury panel understand that Ralph Carder is presumed to be innocent and that the State has the burden to prove beyond any reasonable doubt that Ralph Carder has committed the offense charged in the indictment?

(11) "Do any members of the jury panel now entertain any prejudice against Ralph Carder by reason of the nature of the crime charged?"

Appellant cites no authority in support of his contention that there was error on the part of the court in refusing to ask questions nine and ten. Both questions sought to elicit the jury's understanding of the law and are not proper *voir dire* questions. *McIntyre and Davis v. State,* 1 Md. App. 586, 589, 232 A. 2d 279. The purpose of a *voir dire* examination is to ascertain whether the prospective jurors are free from bias or prejudice and capable of making objective and impartial determinations. *Bristow v. State,* 242 Md. 283, 288, 289, 219 A. 2d 33; *Giles v. State,* 229 Md. 370, 378, 379, 183 A. 2d 359; *Brown v. State,* 220 Md. 29, 36, 150 A. 2d 895; *McIntyre and Davis v. State, supra,* 589. In *McGee v. State,* 219 Md. 53, at page 59, the Court of Appeals said: "* * * it has generally been held that there is no abuse of discretion in refusing to ask a juror his opinion of law or how he would act or decide in certain contingencies, or upon a certain state of the evidence."

Appellant directs his argument to the refusal of the trial court to propound to the prospective jurors question eleven (question three in appellant's brief) which was as follows: "Do any

members of the jury panel now entertain any prejudice against Ralph Carder by reason of the nature of the crime charged?" Here the appellant was charged with the murder of his infant daughter, Brenda Jane, and at the time the exception was noted, appellant contended that it should be ascertained from the panel whether or not such a crime would so shock them that they might be unable to bring in a fair and impartial verdict. In his brief he argues further that since appellant had been indicted for the murder of his wife and two infant children, the evidence produced by the State could readily have influenced the jury in its verdict of conviction.

The appellant was charged in three separate indictments with the murder of his wife and two children, but was only being tried on one indictment charging him with the murder of his eldest daughter, Brenda Jane. In Maryland there is no statute or specific rule prescribing the questions that should be asked a juror on *voir dire* to determine his or her qualifications but the subject is left largely to the court's discretion. In the exercise of that discretion the trial judge should adopt the questions to the needs of each case in the effort to secure an impartial jury. *McGee v. State, supra; Bryant v. State*, 207 Md. 565, 115 A. 2d 502. We are of the opinion that question eleven as proposed by the appellant was amply covered under the questions as propounded to the prospective jurors by the trial judge on his own initiative and in particular question (c), namely: "Do you feel that your mind is perfectly free and clear from all prejudice or bias of any kind that might prevent you from rendering a proper verdict?" We find that the trial court properly exercised his discretion in declining to propound question eleven as well as questions nine and ten.

II

Appellant's contentions as set out in questions two, three, and four may be considered together and are so treated in appellant's brief, since all relate to the voluntariness of the oral admissions or confession made by the appellant to the civilian witness, George Offenbacker, and Corporal Greffen at the scene of the crime.

The appellant contends that his oral admissions or confession made at the scene separately to George Offenbacker, a ci-

vilian, and to Corporal Greffen, a member of the State Police, that he killed his wife and minor children were inadmissible because they were involuntary due to the physical condition of the appellant at the time. The appellant was suffering from gunshot wounds to his face and chest. He further argues that because of the granting of his belated appeal the principles enunciated in the case of *Miranda v. Arizona,* 384 U. S. 436, 16 L.Ed.2d 694, 86 S. Ct. 1602 (1966), should apply as to the requirement of advising the accused of his right to counsel, his right to remain silent, and the other safeguards of the individual therein set forth.

We find no merit in these contentions. Appellant was not in custody when the oral admissions were made to the State's witnesses, Offenbacker and Greffen. While the burden of proving that a confession is voluntary is upon the State, *Kier v. State,* 213 Md. 556, 132 A. 2d 494, the voluntariness test does not apply to a civilian witness who was not in any way associated with the State Police and whose only purpose was to lend assistance to the injured appellant. The trial court found the admissions to be voluntary and admitted them in evidence, but before he would admit the admissions made to Corporal Greffen of the State Police, he required the State to prove that no threats, promises or inducements of any kind were held out to the accused. Moreover, the fact that appellant was suffering from gunshot wounds does not of itself render his admissions involuntary. *Campbell v. State,* 240 Md. 59, 212 A. 2d 747. Here, the lower court found appellant's admissions were freely and voluntarily given.

The appellant's trial began on February 24, 1964, and therefore, the Miranda advisatorial instructions do not apply. *Cunningham v. State,* 247 Md. 404, 418, 231 A. 2d 501. The *Miranda* standards are to be applied only prospectively from June 13, 1966. *Johnson v. New Jersey,* 384 U. S. 719, 16 L.Ed.2d 882, 86 S. Ct. 1772. Moreover, Judge Macgill refused to admit appellant's confession in evidence made at the hospital on March 23, 1963, since he was without the benefit of counsel at the time it was made.

## III

Appellant's fifth contention is that the collateral relief in the

540

nature of a belated appeal under the Uniform Post Conviction Procedure Act, instituted and granted after October 11, 1965, brings such an appeal within the non-final test of *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475.

This contention was fully discussed in this Court's opinion in *Carder v. Warden,* 3 Md. App. 309, 312, 313, 239 A. 2d 143, and was decided adversely to the appellant.

## IV

Appellant's sixth and final contention is that the lower court erred in admitting in evidence photographs concerning the alleged crime, in that they served no relevant purpose and would tend to inflame the minds of the jurors.

The photographs admitted in evidence were those showing the victim, Brenda Jane Carder, and the crime scene and were offered for the purpose of showing the nature of the wound and the scene of the crime. We find no error in the admission of these photographs. The matter is one within the discretion of the trial court and there is nothing to show any abuse of discretion. *Baldwin v. State,* 226 Md. 409, 411, 174 A. 2d 57; *Clarke v. State,* 238 Md. 11, 207 A. 2d 456; *Culver v. State,* 1 Md. App. 406, 411-12, 230 A. 2d 361; *Bowyer v. State,* 2 Md. App. 454, 458, 235 A. 2d 317.

*Judgment affirmed.*