664 A.2d 432

**Paul Stefan RAJNIC**

v.

**STATE of Maryland.**

**No. 1852, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 6, 1995.

288

John D. Cline, Joseph G. Petrosinelli, Stuart G. Nash and William & Connolly, on the brief, Washington, DC, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Submitted before ALPERT, BLOOM and MURPHY, JJ.

ALPERT, Judge.

Paul Stefan Rajnic, appellant, was convicted by a jury in the Circuit Court for Montgomery County of first degree murder, second degree murder, voluntary manslaughter, and two counts of use of a handgun in the commission of a crime of violence, which corresponded with the first and second degree murder convictions. The court imposed concurrent prison sentences of life with all but 20 years suspended for first degree murder, 20 years for second degree murder, and ten years for voluntary manslaughter. It merged the second handgun violation into the first and imposed a concurrent 15 year sentence.

■ On appeal, appellant argues:

I. The evidence was insufficient to support his convictions, in that the State failed to prove beyond a reasonable doubt that appellant did not act in self-defense,

II. The trial court erred by failing to instruct the jury (a) that appellant did not necessarily forfeit his right to self-defense by arming himself in advance, (b) on the jury's duty to "assess reasonableness from [appellant's] perspective" at the time of the incident, (c) on "the right to respond to a group with deadly force," and (d) on the "castle doctrine," and

III. Because he was on psychotropic drugs at the time of trial, he was deprived of his right to be present at trial and to testify in his own defense.

We shall reverse the judgment of the trial court and remand for a new trial. While we find no merit in appellant's first argument, we do find merit in parts (a), (b), and (c) of his second argument.[1] We need not address his third argument in that our decision to reverse renders it moot.

## Facts

What began as a Christmas party on December 17, 1993 ended with the three shootings that led to appellant's convictions. The shootings occurred in the house that appellant shared with his girlfriend, Cecilia Boswell, and her sister, Margaret Boswell. The evidence presented at trial established that there was a longstanding feud between appellant on the one side and Margaret Boswell and her boyfriend, Brian Doty, on the other.

Cecilia kept a handgun in the bedroom that she shared with appellant. Shortly after the party began, appellant went into the bedroom and placed the handgun on a dresser. Later that evening, Margaret—apparently falsely—reported to Doty and other party goers that she heard appellant and Cecilia quarrelling in the bathroom and that she believed that appellant had struck Cecilia. That angered Doty and three other men, Doug Bostic, Steve Smith, and Mike Lachance. Doty and Bostic had been drinking heavily. Despite Cecilia's protestations that appellant had not struck her, the men shouted at appellant and threatened to beat him. Appellant went into his bedroom and closed the door, but he could hear the men continue to shout and threaten him from the hallway. He removed a shotgun from under his bed and loaded it.

---

1. Our decision here today should not be construed as a departure from the appellate policy of general adherence to the Maryland Criminal Pattern Jury Instructions. *See generally Wills v. State,* 329 Md. 370, 620 A.2d 295 (1993). Rather, our holding, that more was required than that set forth in the pattern instruction on self-defense, is limited to the particular and somewhat unique facts of the instant case.

Ultimately, Doty, Bostic, and Smith charged into the bedroom. During the melee that followed, Doty and Smith were shot and killed with the handgun; Bostic was shot and killed with the shotgun.

## Discussion

### I

### Sufficiency of the Evidence

■ Appellant does not dispute that he fired the fatal shots.[2] He argues only that he acted in self-defense. Appellant posits that he produced evidence that he acted in perfect self-defense and that the State failed to shoulder the burden of proving beyond a reasonable doubt that he did not do so. In the alternative, appellant argues that the evidence at least established imperfect self-defense and that his murder convictions should therefore be "reduced" to manslaughter convictions.

■ The requirements for perfect self-defense are:
(1) The accused must have had reasonable grounds to believe himself in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant;
(2) The accused must have in fact believed himself in this danger;
(3) The accused claiming the right of self-defense must not have been the aggressor or provoked the conflict; and
(4) The force used must have not been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded.

*Dykes v. State,* 319 Md. 206, 211, 571 A.2d 1251 (1990) (quoting *State v. Faulkner,* 301 Md. 482, 485–86, 483 A.2d 759 (1984)). If "the defendant honestly believed that the use of [deadly] force was necessary but ... this subjective belief was unrea-

---

2. Appellant's recitation of facts, however, suggests that Doty was holding the shotgun when, during a struggle with appellant, it went off and struck Bostic.

sonable under the circumstances," an imperfect self-defense would exist and the defendant would be guilty only of manslaughter. 319 Md. at 213, 571 A.2d 1251 (quoting 301 Md. at 500, 483 A.2d 759).

█ There is no dispute that Doty, Bostic, Smith, and Lachance were all larger than appellant, were intoxicated, threatened to beat appellant, and charged into appellant's bedroom on the heels of the threats. Even so, we are not convinced that a jury was constrained to find that the requirements set forth in *Dykes*, for perfect or imperfect self-defense, were conclusively established. The jury heard the testimony of the witnesses and saw the physical evidence. It may well have concluded that appellant did not have reasonable grounds to believe that he was in danger of *death* or *serious* bodily harm. It may not have believed appellant's testimony that he in fact believed himself to be in such danger. Moreover, it may have determined that appellant used excessive force. As the Court of Appeals has explained,

> when a sufficiency challenge is made, the reviewing court is not to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt"; rather, the duty of the appellate court is only to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*State v. Albrecht,* 336 Md. 475, 479, 649 A.2d 336 (1994) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)) (emphasis *Jackson* Court's).

## II

### Jury Instructions

#### (a)

#### Arming One's Self in Advance of an Attack

█ Defense counsel requested that the trial court instruct the jury to the effect that (i) appellant had a right to arm

himself if he was not seeking a fight but was apprehensive that he would be attacked, and (ii) appellant did not forfeit his right to self-defense by arming himself in advance, provided he did not seek the encounter and had reason to fear an unlawful attack on his life. Appellant now treats the two requested instructions as if they were identical and contends that the trial court erred by refusing to give them. We agree that the second instruction should have been given and so we reverse the judgments of the trial court.

The second requested instruction was lifted directly from *Gunther v. State,* 228 Md. 404, 409, 179 A.2d 880 (1962). In that case, the defendant's sister asked him to help her move from the house where she lived with her physically abusive husband. Fearing trouble from the husband, who was known to the defendant to carry a gun, the defendant put a rifle on the back seat of his car before going to help his sister. The husband did indeed lunge into the defendant's car, and the defendant shot him to death. The court refused to instruct the jury that "the defendant had a right to arm himself in anticipation of an assault," and the jury convicted the defendant of second degree murder. *Id.* at 408, 179 A.2d 880. In reversing the conviction, the Court of Appeals quoted Rollin M. Perkins, *Perkins on Criminal Law* at 48 (1957) for the proposition that " 'one who is not in any sense seeking an encounter, but has reason to fear an unlawful attack upon his life, does not forfeit his privilege of self-defense merely by arming himself in advance.' " 228 Md. at 409, 179 A.2d 880.

Similarly, in *Bennett v. State,* 230 Md. 562, 188 A.2d 142 (1963), the defendant wife stashed a loaded shotgun in her kitchen in response to her husband's threats to kill her. When, after an argument, the husband entered the kitchen with a hunting knife in his hand, the defendant shot and killed him. The trial court denied the defendant's request for an instruction "that if the defendant had reasonable grounds to believe that her husband intended to kill her or to do her serious bodily injury, then she had a right under the circumstances to arm herself in anticipation of an assault." *Id.* at

566, 188 A.2d 142. The defendant was convicted, but the Court of Appeals reversed, explaining:

> Since the decision in *Gunther* ..., the right of a defendant to arm himself in anticipation of an assault can no longer be questioned where the circumstances are such as could induce a jury to believe that the defendant was not the aggressor, but was instead apprehensive that he might be attacked by the victim.

*Id.* at 567, 188 A.2d 142 (citation omitted). *See generally Crawford v. State,* 231 Md. 354, 361, 190 A.2d 538 (1963) (where, in reversing the defendant's conviction, at a bench trial, of manslaughter for shooting an unarmed man who attempted to break into his home for the expressed purpose of robbing and beating him, the Court of Appeals pointed out that "one not seeking a fight may arm himself in anticipation of a violent attack").

Maryland Rule 4–325(c) directs: "The court may, and at the request of any party shall, instruct the jury as to the applicable law...." In the instant case, the defense presented evidence that appellant and Margaret Boswell did not get along and that, before the party, Margaret threatened to have her friends "take care of" appellant. During the party, Doty, Bostic, Smith, and Lachance all threatened to beat appellant. There was no dispute that appellant was in his own bedroom with the door closed when Doty, Bostic, and Smith burst in. Contrary to the State's assertion that the proposed instruction was not supported by the evidence, the defense presented ample evidence from which a jury could find that appellant had reason to fear an attack that could cause death or serious bodily harm and that appellant was not the aggressor. In accordance with *Gunther,* 228 Md. at 409, 179 A.2d 880, the trial court should have instructed the jury to the effect that one who is not the aggressor but has reason to fear an attack upon his life does not forfeit his right to self-defense by arming himself in advance of the attack.

Although, in construing *Gunther,* the Court of Appeals in both *Bennett* and *Crawford* spoke of a right to arm in

advance of an attack, we believe that the Court was merely using the term as "short-hand" and did not mean to suggest that such a broad right literally exists. As we explained in *Medley v. State,* 52 Md.App. 225, 234–35, 448 A.2d 363, *cert. denied,* 294 Md. 544 (1982),

> *Gunther* must be read as recognizing no more than the principle expressed in the authorities cited in it—that one does not necessarily forfeit his privilege of self-defense because he has previously armed himself in anticipation of an attack. It does not support the existence of any such right to arm, either as a general affirmative right or as a defense to the violation of a statutory prohibition against possessing or carrying weapons in public.

(Emphasis omitted). Thus, appellant's first requested instruction—that under certain circumstances a defendant has a "right to arm himself in anticipation of an assault"—was technically incorrect and the trial court properly declined to give it.

### (b)

### Reasonableness of Defendant's Beliefs

■ Defense counsel further requested that the trial court instruct the jury that, in determining whether appellant's conduct was reasonable under the circumstances, it should keep in mind that "[a] belief which may be unreasonable to a calm mind may be actually and reasonably held under the circumstances as they appeared to the Defendant at the time of the incident." Appellant points out that, in response to defense counsel's objection at the close of jury instructions, the court agreed to give the instruction. It failed to do so, however.

■ It is well-established that a defendant's claim that self-defense was necessary "should be judged by the facts as they *appeared to him,* whatever they truly were. . . ." *Winner v. State,* 144 Md. 682, 686, 125 A. 397 (1924) (emphasis in original). *See generally* David E. Aaronson, *Maryland Criminal Jury Instructions and Commentary* § 5.14 (2d ed. 1988).

Apparently relying on the principle set forth in Md.Rule 4–325(c), that "[t]he court need not grant a requested instruction if the matter is fairly covered by instructions actually given," the State posits that this concept was adequately conveyed to the jury. It points to the court's instructions that, in order to find that appellant acted in perfect or imperfect self-defense, it must find that he "actually believed" that he was in "immediate and imminent" danger of death or serious bodily harm. That language did not suffice. The instruction that the jury must find that the defendant actually believed that he was in immediate and imminent danger did not include the thought that the defendant's belief had to be reasonable in view of the circumstances as they appeared to the defendant at the time. The court erred by failing to give the instruction.

██ The trial court's failure to give the requested instruction, compounded with the other instructional errors, may well have influenced the jury's findings as to the reasonableness of appellant's actions. It therefore cannot be said that the error was harmless. *See generally Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976).

### (c)

### Responding to a Group

██ The trial court also refused defense counsel's request for the following jury instruction:

[W]here several persons are acting together aggressively toward another, and, because of their acts or the acts of either of them, it reasonably appears to him that his life is in danger, or he is in danger of great bodily harm, he may slay any of such persons or all of them, if it reasonably appears to him to be necessary so to do to protect himself from death or great bodily harm. And when a person is called upon to act under such circumstances, he is not bound to decide as to which one of the persons made the actual hostile demonstrations and refrain from injuring the others.

The exact language of the requested instruction was used by this Court in *Corbin v. State,* 94 Md.App. 21, 28–29, 614 A.2d

▉▉▉▉▉▉▉▉

1329 (1992) (quoting with approval Francis Wharton, *The Law of Homicide* § 240 at 396–97 (Frank H. Bowlby ed., 3d ed. 1907)).[3] Again, the State asserts that the gist of the requested instruction was covered by instructions actually given, to the effect that, "relative to determining the applicability of the defenses of perfect and imperfect self-defense, [the jury] was required to assess whether the force used by [appellant] was no more than was necessary in light of the threatened or actual harm he perceived." Again, we disagree.

As appellant points out, the court's instructions left open the possibility that the jury believed appellant's conduct toward Doty, Bostic, and Smith had to be considered in light of each man's conduct alone. Indeed, the jury returned verdicts of first degree murder as to Smith, second degree murder as to Doty, and voluntary manslaughter as to Bostic. As appellant explains, "[t]he proposed instruction would have made clear that appellant could view the conduct of the men as a group and use force against them as a group." The court committed reversible error by refusing to give the instruction.

### (d)

### Castle Doctrine

▉▉▉▉ Finally, appellant complains that the court refused to instruct the jury on the so-called "castle doctrine"—that a person in his own home has no duty to retreat before using reasonable force against an attacker. Appellant acknowledges that the court did not instruct the jury on the general duty to retreat before employing self-defense. Contrary to the law of Maryland, he argues that the court nevertheless should have instructed the jury that an exception to the duty to retreat existed in the instant case. The argument is without merit.

---

3. *Corbin* did not involve a jury instruction on responding to a group. In *Corbin*, we held that a trial court erred by refusing to give any instruction at all on perfect and imperfect self-defense where the defense presented evidence that the victim was assisting a person who attacked the defendant with deadly force. 94 Md.App. at 30–31, 614 A.2d 1329.

This Court was faced with a similar situation in *Sangster v. State,* 70 Md.App. 456, 521 A.2d 811 (1987), *aff'd,* 312 Md. 560, 541 A.2d 637 (1988). There, a defendant convicted of assaulting a police officer appealed on the ground, *inter alia,* that the trial court refused his requested instruction on the "castle doctrine." In *Sangster,* as in the instant case, there was no dispute that the incident occurred in the defendant's home, and the court's instructions made no mention whatsoever of the general duty to retreat. As we explained in affirming the conviction in *Sangster,* "[i]t would be senseless to instruct the jury on the castle doctrine where no instruction was given on the duty to retreat." 70 Md.App. at 481, 521 A.2d 811.

JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A NEW TRIAL. MONTGOMERY COUNTY TO PAY THE COSTS.