614 A.2d 1329

**Shirley Mae CORBIN**

v.

**STATE of Maryland.**

**No. 206, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Nov. 2, 1992.

22

Melissa M. Moore, Asst. Public Defender, Baltimore (Stephen E. Harris, Public Defender, on the brief), for appellant.

Diane E. Keller, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Submitted before WILNER, C.J., and ALPERT and WENNER, JJ.

WILNER, Chief Judge.

A jury in the Circuit Court for Wicomico County convicted appellant of second degree murder and carrying a weapon openly with intent to injure. The court imposed concurrent sentences of 20 years for second degree murder and three years for carrying a weapon openly with intent to injure, and appellant filed this appeal. She argues that

"I. The lower court erred in refusing to instruct the jury on self-defense and imperfect self-defense[, and]

II. The lower court erred in denying appellant's motion for a new trial" on the basis of newly discovered evidence that, in her view, would have supported her theory of self-defense.

Because we find merit in appellant's first argument, we shall reverse the judgment of the trial court as to second degree murder.[1] We need not and shall not address appellant's second argument.

The victim in the instant case was the sister of appellant's husband. Appellant admits that she stabbed the victim in the back and chest with a butcher knife, and that the second wound was fatal. She contends, however, that her testimo-

---

1. Appellant does not suggest that a perfect or an imperfect self-defense would affect her conviction for carrying a weapon openly with intent to injure, apparently conceding that the conviction was based on her conduct before the alleged self-defense was employed. Nor does she challenge the sufficiency of the evidence supporting that conviction.

ny at trial sufficiently generated an issue of perfect or imperfect self-defense in connection with the infliction of the second wound and that the trial court therefore erred by refusing to instruct the jury in that regard.

Although there is disagreement as to the circumstances immediately surrounding the fatal injury, the events leading up to that injury are not in dispute. Both the State and appellant agree that the victim and four other persons, including appellant's husband, were sitting in a parked car outside an apartment building one evening in October of 1990. The victim was in the driver's seat and appellant's husband was seated in the back. Appellant, who had been driving around looking for her husband, spotted the car. She parked her own car behind it and got out.

One witness for the State testified that appellant stabbed the victim in the back of the shoulder as the victim was getting out of the car. Appellant and another State's witness both told the court that appellant first opened the back door of the car, where her husband was sitting, then lunged across the inside of the car and stabbed the victim in the back. In any event, both sides presented evidence that appellant's husband then pushed appellant away from the car and the victim. At some point thereafter, the victim climbed out of the car, approached appellant, and demanded an explanation for the stabbing.

The State's evidence indicates that, as the victim was questioning appellant, appellant inflicted the fatal chest wound. Appellant testified, however, that before the victim ever got out of the car, appellant's husband got out and began beating appellant. While the beating was taking place, appellant was attempting to back away from the scene. She told the court that she was afraid of her husband because it was obvious to her that he had been drinking and she "kn[e]w his rage when he [was] drinking." According to appellant, it was sometime during the beating that the victim approached and demanded to know why she had been stabbed. Appellant tried to apologize to the victim but the victim began kicking appellant on her leg,

and appellant's husband started kicking her as well. Appellant could not see clearly because her eyeglasses had been knocked off during the brawl and one eye had been struck and was swollen. Appellant testified: "all at once, I realize I still had the knife, and I just started swinging hoping somebody would go back or do something you know...." She explained: "I was scared to let [the knife] go because if I let go, I figure the two together would beat me to death, and, like, I said, I was trying to get them off me."

 In order for self-defense to be a complete, or perfect, defense to a homicide,

"(1) The accused must have had reasonable grounds to believe himself in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant;

(2) The accused must have in fact believed himself in this danger;

(3) The accused claiming the right of self-defense must not have been the aggressor or provoked the conflict; and

(4) The force used must have not been unreasonable and excessive, that is, the force must not have been more force than the exigency demanded."

*Dykes v. State,* 319 Md. 206, 211, 571 A.2d 1251 (1990) (quoting *State v. Faulkner,* 301 Md. 482, 485–86, 483 A.2d 759 (1984)). Under ordinary circumstances, moreover, the accused must make all reasonable efforts to retreat before resorting to the use of deadly force. *See Gainer v. State,* 40 Md.App. 382, 386–88, 391 A.2d 856 *cert. denied,* 284 Md. 743 (1978). Self-defense will be an imperfect, or partial, defense to a homicide, thus mitigating the homicide from second degree murder to voluntary manslaughter, if, all other elements of the defense having been established, the accused's belief as to either the danger from the assailant or the amount of force necessary to defend is actual but not reasonable. *See Dykes,* 319 Md. at 213, 571 A.2d 1251.

**26**

 A defendant is entitled to jury instructions on perfect or imperfect self-defense if he produces "some evidence" to support them. *See id.* at 215–17, 571 A.2d 1251 (citing *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976)).

> *"Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—'some,' as that word is understood in common, everyday usage. It need not rise to the level of 'beyond a reasonable doubt' or 'clear and convincing' or 'preponderance.' The source of the evidence is immaterial; it may emanate solely from the defendant. It is of no matter that the self-defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support his claim that he acted in self-defense, the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a reasonable doubt to the satisfaction of the jury that the defendant did not kill in self-defense."

*Dykes,* 319 Md. at 216–17, 571 A.2d 1251 (emphasis in original). Under Maryland Rule 4–325(c), a trial court must, upon the request of any party, instruct the jury as to the applicable law. *See Binnie v. State,* 321 Md. 572, 582, 583 A.2d 1037 (1991) (observing that the wording of Rule 4–325(c) renders the rule mandatory).

 At the close of all evidence at the trial below, the trial court denied defense counsel's request for instructions on perfect and imperfect self-defense. The court opined:

> "[T]he unconflicted [sic] evidence by the defendant in this case was she was the aggressor. The defendant without any provacation [sic] at all stabbed, by her only testimony, the victim in the back with a knife, back of the shoulder with a knife, and then everyone who gets out of the car is part of a continuing affray, and there is evidence from your client that her husband and the victim

did fight back, but it was still in part during the affray, and she is the one with the knife, the only one who ever used a knife, ever used."

Before instructing the jury the next day, the court repeated its decision to deny the requested instructions on perfect and imperfect self-defense. The court reaffirmed its belief that the case involved one "continuing affray," that appellant was the initial aggressor, and that appellant was the only combatant to use a deadly weapon.[2]

Contrary to the conclusion of the trial court, appellant's testimony suggests that two separate confrontations, rather than one "continuing affray," occurred on the night in question. Based on appellant's testimony, an inference could be drawn that one confrontation occurred when appellant stabbed the victim in the back. That confrontation between appellant and the victim ended when appellant's husband pushed appellant away from the car and the victim. At that point, appellant's testimony indicates, the victim was in a position of safety and appellant was no longer the aggressor. Although appellant never dropped her knife, she explained that she apologized for the stabbing and attempted to retreat. *See generally* 2 Charles E. Torcia, *Wharton's Criminal Law* § 125 at 129 (14th ed. 1979) and Clark & Marshall, *A Treatise on the Law of Crimes* § 7.03 at 497–98 (Marian Quinn Barnes ed., 7th ed.

---

**2.** We perceive no merit in the State's contention that because defense counsel did not take exception, after the jury was instructed, to the court's refusal to instruct on perfect and imperfect self-defense, the argument has been waived. Although Md. Rule 4–325(e) requires objection after the court instructs the jury, "under certain well-defined circumstances, when the objection is clearly made before *instructions* are given, and restating the objection after the instruction would obviously be a futile or useless act, we will excuse the absence of literal compliance with the requirements of the Rule." *Sims v. State,* 319 Md. 540, 549, 573 A.2d 1317 (1990). Defense counsel argued at the close of all evidence that the requested instructions should be given. She excepted to the court's refusal to give the instructions at that time and, again, the next day just before the jury was instructed. Under the circumstances, we are satisfied that a third exception, after the jury was instructed, "would obviously [have been] a futile or useless act." *Id.*

1967) (discussing factors to be considered in determining whether an aggressor has retreated from an attack).

An inference could be drawn, moreover, that appellant's husband initiated a second confrontation by beating appellant, not in order to defend the victim but to retaliate against appellant for her assault upon his sister. Appellant's testimony indicates that the victim then joined in the second confrontation by kicking appellant in the leg. Appellant told the court that she believed her husband had been drinking, that she "kn[e]w his rage" under such circumstances, and that she feared that her husband and the victim would beat her to death. While the victim's conduct alone clearly did not amount to deadly force, appellant's testimony supports an inference that the beating by her husband did constitute deadly force, and that the victim was assisting appellant's husband. *See generally Lambert v. State*, 70 Md.App. 83, 93, 519 A.2d 1340 (1987) (in determining whether an unarmed attack constitutes deadly force, consider such factors as "the respective sizes and sex of the assailant and defendant, ... *the presence of multiple assailants*, and ... the especially violent nature of the unarmed attack. Past violent conduct of the assailant known by the defendant is also relevant ..." (emphasis added)).

■ Although the issue is one of first impression in Maryland, courts in other jurisdictions have held that a defendant who is under attack by an aggressor using deadly force may defend himself with deadly force against an intervenor who comes to the aggressor's assistance, even if the intervenor does not himself use deadly force. *See generally* 40 Am.Jur.2d *Homicide* § 144 (1968); Francis Wharton, *The Law of Homicide* § 240 at 396–97 (Frank H. Bowlby ed., 3d ed. 1907). Wharton states the principle thusly:

"[W]here several persons are acting together aggressively toward another, and, because of their acts or the acts of either of them, it reasonably appears to him that his life is in danger, or he is in danger of great bodily harm, he may slay any of such persons or all of them, if it

reasonably appears to him to be necessary so to do to protect himself from death or great bodily harm. And when a person is called upon to act under such circumstances, he is not bound to decide as to which one of the persons made the actual hostile demonstrations and refrain from injuring the others."

*Id.* (footnotes omitted).

In *Johnson v. State,* 125 Tenn. 420, 143 S.W. 1134 (1912), the defendant claimed that, while he was involved in a fight involving deadly force with the decedent's brother, who was the aggressor, the decedent intervened and attempted to disarm the defendant. The defendant requested a jury instruction to the effect that he was entitled to use deadly force to defend himself against the decedent and his brother if either the decedent *or* his brother wrongfully used deadly force against him, but the trial court refused. Reversing the judgment of the trial court, the Supreme Court of Tennessee explained:

"On the hypothesis put in this instruction, [the decedent] was intervening not as a peacemaker, but for the purpose of disarming a combatant, who was at the time without fault and whose life was being put in immediate peril at the hands of a third party. A person who thus intervenes to disarm a man who is trying to protect himself against an unlawful assault from a third party, which assault puts him in danger of death or great bodily harm, becomes particeps criminis with such third party and may be defended against in the same manner."

*Id.* at 1137.

Similarly, in *State v. Green,* 157 W.Va. 1031, 206 S.E.2d 923 (1974), a defendant involved in a brutal fight with an assailant testified that she broke away from the assailant just long enough to retrieve a handgun, then saw the assailant and a group of people approaching her. The defendant fired a shot into the group, killing a relative of the assailant. The trial court refused to instruct the jury regarding self-defense, but the Supreme Court of Appeals

of West Virginia reversed. Although the decedent had not used any force against the defendant, the Court explained:

"'Where, in a trial for murder, there is competent evidence tending to show that the accused believed, and had reasonable grounds to believe, that he was in danger of losing his life or suffering great bodily harm at the hands of several assailants acting together, he may defend against any or all of said assailants, and it is reversible error for the trial court to refuse to instruct the jury to that effect.'"

*Id.* at 926 (quoting *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854, 855 (1945)). *Cf. Lambert,* 70 Md.App. at 95, 519 A.2d 1340 (evidence indicating that a crowd gathered during a confrontation between the defendant and the victim did not support a jury instruction on the use of deadly force in self-defense where the evidence further indicated that no member of the crowd intervened against the defendant until after the defendant elevated the fight to the deadly force level); *Lucas v. Commonwealth,* 141 Ky. 281, 132 S.W. 416, 418 (1910) (where there was evidence that four men confronted the defendant and a companion with the intent to rob them, the trial court should not have restricted its instruction on self-defense to the threat posed by the decedent alone but should have instructed the jury to consider the threat posed by all four assailants); *Lerma v. State,* 807 S.W.2d 599, 601–02 (Tex.Ct.App.1991) (where there was evidence that two assailants confronted the defendant, the trial court should not have restricted its instruction on self-defense to the threat posed by the decedent alone but should have instructed the jury to consider the defendant's "actions in the light of the threat he perceived from both" assailants).

In the instant case, we are convinced that appellant presented at least "some evidence" that the fatal injury to the victim was inflicted during a second confrontation—between appellant, her husband, and the victim—in which appellant was not the aggressor. Although the victim did not use deadly force in that confrontation, an inference

could be drawn from appellant's testimony that appellant's husband did use such force, and that the victim was assisting appellant's husband. Under the circumstances, appellant was entitled to jury instructions regarding the law of perfect and imperfect self-defense. The trial court erred by refusing to give the requested instructions.

JUDGMENT AS TO SECOND DEGREE MURDER REVERSED; JUDGMENT AS TO CARRYING A WEAPON OPENLY WITH INTENT TO INJURE AFFIRMED. WICOMICO COUNTY TO PAY THE COSTS.