724 A.2d 738

Donald Anthony JONES

v.

STATE of Maryland.

No. 297, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Feb. 24, 1999.

Gina M. Serra, Assistant Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, MD, for appellant.

Mary Ann Ince, Assistant Attorney General (J. Joseph Curran, Attorney General, Baltimore, MD, and Jack B. Johnson, State's Attorney for Prince George's County of Upper Marlboro, MD, on the brief), for appellee.

Submitted before SONNER, BYRNES and JOHN J. BISHOP, Jr. (Retired, specially assigned), JJ.

BYRNES, Judge.

Donald Anthony Jones, appellant, was convicted by a jury in the Circuit Court for Prince George's County (Sothoron, J., presiding) of one count of second degree assault and four counts of reckless endangerment. He was sentenced to ten years imprisonment with all but four years suspended for the assault conviction, and to three concurrent four-year terms for the convictions on three counts of reckless endangerment. The court merged the remaining reckless endangerment conviction into the assault conviction. Appellant presents the following questions for review:

I. Did the trial court err in refusing to strike the testimony of a witness who had violated the sequestration rule?

II. Did the trial court err in refusing to instruct the jury that self defense applies to reckless endangerment?

We answer both questions in the negative and, accordingly, we affirm the judgments.

## FACTS

On July 6, 1997, Carmen Reavis met several of her friends for an afternoon of fun at Adventure World, a water amusement park located in Prince George's County. Among them were Tracy Barber, Gerald Goode, Walter Stokes, Reginald Davis, and William Brown. The group collected inside the park at around 1:30 p.m. and spent the next several hours together. Appellant and Rashad Friday, his friend, arrived at Adventure World at around 5:30 p.m. the same day. About ten minutes later, Friday spotted Reavis, whom he did not know, and, thinking she was attractive, approached her.

Appellant testified in his own defense. He explained that Friday "reached over to touch [Reavis's] arm to get her attention so she could hear him. . . ." When Reavis did not respond, Friday "touched" her arm again. This time, "[s]he responded immediately with cursing and fussing." Friday then "put his hands up and like okay, no problem." Appellant turned away momentarily to speak with some friends who were standing nearby; when he looked back he saw that "approximately seven to nine guys [had] surrounded [Friday] in a confrontation." Among them were Goode, Stokes, Brown, and Davis. Appellant approached the men and said to Friday, "[l]et's walk." He and Friday then walked together toward the front gate, "where we had seen some safety, the only place I [had] seen security." The group followed. At that point, appellant became scared.

Appellant further testified that as he and Friday crossed over a narrow bridge, he looked to his right and saw three of the pursuers attack Friday. He watched Friday "go down" as his attackers "stomp[ed] on him" and kicked him in the head

and chest. Immediately thereafter, someone grabbed appellant from behind, threw him into a railing and repeatedly hit his head against it. Appellant remembered being accosted by three assailants: one who stood behind him and restrained his arms and two others who alternated striking him in the head and chest. Appellant explained that, "[w]hen I got one of my arms released I reached in my right pocket, pulled out a knife, opened it up" and "cut each of them until they let me go."

The State's witnesses offered a very different version of events. Reavis testified that as she and her friends were walking toward the "Mind Eraser" roller coaster, Friday grabbed her arm. She did not want to speak with him, so she continued walking. Friday approached her again a few minutes later and this time reached over and touched her breast. When Goode learned what had happened, he confronted Friday and warned him to keep his hands to himself. According to Reavis, "it wasn't like a crowd of people, you know, around or nothing. It was just like basically us three, and it was a couple people around, but they was like a little distance back." Friday made disparaging remarks to Reavis and she found him to be belligerent, not apologetic. Reavis heard appellant ask Goode if he wanted to "take it outside," but Goode refused. About five minutes later, appellant and Friday suddenly attacked Goode on the bridge. Brown, Williams, and Davis got involved in the brawl to help Goode. Reavis saw appellant "swinging his arms wildly."

Stokes testified that appellant had a knife and that during the brawl, appellant stabbed him in the leg. Brown testified that during the commotion, appellant was "swinging" and then spun around and stabbed him. When the dust cleared, Stokes, Brown, Goode, and Davis had been wounded.

Additional facts will be recited as necessary to our discussion of the issues.

## DISCUSSION

### I.

Before trial, the court directed that all potential witnesses be excused from the courtroom and that they not discuss their

testimony with anyone during the trial. Reavis was the first witness to testify. Goode took the stand after Reavis. Shortly after Goode finished testifying and left the courtroom, appellant's attorney informed the trial court "that both Miss Reavis and Mr. Goode have come out of the courtroom and related their testimony to other people in the hallway who are potential witnesses in this case."

The court allowed the attorneys to conduct a *voir dire* examination of Reavis and Goode later that day. Goode denied having discussed the case with anyone. Reavis, on the other hand, acknowledged that she had spoken to her friends in the hallway about some of the questions that she had been asked in court, but claimed that she had not been aware of the sequestration order at the time. She further explained that she did not discuss the case again after she was advised of the sequestration order and what it meant. In her defense, the prosecutor explained, "Your Honor, I have—spoken with the gentlemen in the case. I can not (sic) specifically recall whether I told Miss Reavis [about the order]."

The trial judge instructed the attorneys "to both take the time this evening to re-emphasize to your prospective witnesses that there is a rule on witnesses and what that means," and advised that it was their responsibility to make sure the sequestration order was followed.

The next day, appellant moved to strike Reavis's testimony as a sanction for her having violated the sequestration order. The trial court found that "Miss Reavis did talk with certain parties concerning her testimony," but denied appellant's motion, explaining that "[w]hat I'm concerned about is, as [the prosecutor] admitted yesterday, she may not have advised Miss Reavis of [the sequestration] rule." Appellant now argues that that ruling was in error. Specifically, he maintains that the trial court abused its discretion in refusing to strike Reavis's testimony when it was "clearly established" that she had violated the sequestration order.

Maryland Rule 5-615 governs the exclusion of witnesses. Section (a) of the rule provides, in part, that "upon

the request of a party made before testimony begins, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." " 'The purpose of the sequestration of witnesses has been said to be to prevent them from being taught or prompted by each other's testimony.' " *Redditt v. State,* 337 Md. 621, 628, 655 A.2d 390 (1995) (applying former Md.Rule 4–321 and quoting *Bulluck v. State,* 219 Md. 67, 70–71, 148 A.2d 433, *cert. denied,* 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 85 (1959)). *See also Hurley v. State,* 6 Md.App. 348, 352, 251 A.2d 241 (1969). Section (e) of Md.Rule 5–615 further provides that "[t]he court may exclude all or part of the testimony of the witness who receives information in violation of this Rule." "When there has been a violation of a sequestration order, whether there is to be a sanction and, if so, what sanction to impose, are decisions left to the sound discretion of the trial judge." *Redditt,* 337 Md. at 629, 655 A.2d 390.

Consistent with the sequestration rule's objectives of "avoid[ing] an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony" and "avoid[ing] the outright manufacture of testimony," *Hurley,* 6 Md.App. at 352, 251 A.2d 241, section (e) of Md.Rule 5–615 permits exclusion by the court of the testimony of a witness who has *received* information in violation of the rule. In this case, Reavis did not *receive* information in violation of the sequestration order. Rather, she *imparted* information to other potential witnesses after she already had testified. Thus, to the extent that Reavis violated the sequestration rule, her conduct did not taint her own testimony. Exclusion of her testimony was not a permitted sanction under Md.Rule 5–615(e) and would not have served the purposes of the sequestration rule in any event. The trial court did not abuse its discretion in denying appellant's motion to strike Reavis's testimony.

## II.

The second claim of error relates to the trial court's failure to grant a requested jury instruction. Appellant was charged,

*inter alia,* with attempted second degree murder, attempted voluntary manslaughter, first degree assault, and second degree assault. In addition, he was charged with four counts of reckless endangerment, under Md.Code (1957, 1996 Repl.Vol., 1998 Supp.), Art. 27, § 12A-2(a)(1).

Appellant submitted the following proposed jury instruction on reckless endangerment:

> If an individual is acting in defense of a crime of violence, he cannot be guilty of reckless endangerment. *It is the State's burden to prove beyond a reasonable doubt that the defendant was not acting in defense of a crime of violence.* If you are not so convinced, you must find the defendant not guilty of all counts charging Reckless Endangerment.

(Emphasis added). In a footnote to the proposed instruction, appellant cited "Art. 27 § 12A-2(b)(4)."

The trial court instructed the jury on self-defense and imperfect self defense. It did not give appellant's proposed instruction on reckless endangerment. Appellant's counsel excepted, as follows:

> THE COURT: Anything else, [Defense Counsel]?
>
> [DEFENSE COUNSEL]: Yes. On the reckless endangerment, I've requested— ... *I asked the Court with respect to reckless endangerment to instruct the jury that if an individual is acting in defense of a crime of violence he cannot be guilty of reckless endangerment. That is a statutory provision of Article 27, Section 12-A-2B4. I think the jury should know that, that it's akin to a self-defense.*
>
> Reckless endangerment, my client was being attacked and he was the victim of a crime of violence. He can not (sic) be held guilty of reckless endangerment, according to the statute. We're requesting that the jury be so instructed.
>
> THE COURT: Your exceptions are noted. I would point out again that reckless endangerment does not require specific intent.

[DEFENSE COUNSEL]: But the statute does say what I just asked, that it is an accurate statement of the law and I think it's applicable to this case.

(Emphasis added).

Appellant contends that the requested instruction properly stated the law and that the evidence generated the instruction. Citing Md.Rule 4–325(c), appellant argues that the court was duty bound to give the instruction and erred in not doing so.

■ The State first counters that appellant failed to preserve this issue for review. Specifically, the State points to a colloquy between appellant and the trial judge in which appellant excepted to the omission of the word "initial" before "aggressor" in the court's instruction on self-defense:

[DEFENSE COUNSEL]: I thought it was—I took [the instruction on common law self-defense] right from the pattern instruction, but I'm asking for the Court to say that [appellant] was not the initial aggressor. I'm asking the Court also, as I said, to instruct the jury that self-defense applies to all of the counts, *with the exception of reckless endangerment;* that imperfect self-defense applies to first degree assault as well . . .

(Emphasis added). Seizing upon counsel's statement that "self-defense applies to all of the counts, with the exception of reckless endangerment," the State contends that appellant "expressly acknowledged that self-defense did not apply to reckless endangerment," and thus cannot now assert that the trial court erred in "fail[ing] to instruct [the jury to] the contrary."

The context of the statement by appellant's counsel makes plain that he was drawing a distinction for the court between the offenses for which he had requested an instruction on self-defense and the offense of reckless endangerment, for which he had requested an instruction under Art. 27, § 12A–2(b)(4). Moreover, it is clear from the record that appellant adequately apprised the trial court of his position concerning the requested instruction. The issue was preserved for appellate review.

■ With respect to the merits of the argument, the State contends that the trial court properly refused to grant the requested instruction because the language of Article 27, § 12A–2(b)(4) on which appellant was relying had been repealed and the language of the statute as amended does not entitle appellant to the instruction he submitted to the court. We agree.

As we have indicated, the alleged offenses in this case occurred on July 6, 1997. Effective April 8, 1997, Art. 27, § 12A–2 was amended to provide:

(a) *Creation of substantial risk of death or serious physical injury; penalties.*—(1) Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical . injury to another person is guilty of the misdemeanor of reckless endangerment. . . .

(2) Subject to the provisions of subsection (b) of this section, any person who recklessly discharges a firearm from a motor vehicle in such a manner that it creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment. . . .

(b) *Applicable Conduct.*— . . .

. . . . .

. . . (2) *Subsection (a)(2) of this section does not apply to any conduct involving:* . . .

. . . . .

(ii) *An individual acting in defense of a* . . . *crime of violence.* . . .

1997 Md.Laws, Ch. 32, § 1. (Emphasis added).

As the language of § 12A–2(b)(2)(ii) makes plain, an individual who is acting in defense of a crime of violence and who engages in the conduct specified in § 12A–2(a)(2), *i.e.,* "recklessly discharg[ing] a firearm from a motor vehicle . . ." is *not* committing the crime of reckless endangerment. That exception is narrowly written, however, and does *not* apply to the more general conduct set forth in § 12A–2(a)(2), *i.e.,* "reck-

lessly engag[ing] in conduct that creates a substantial risk of death or serious physical injury to another person . . ."

In this case, appellant was charged with reckless endangerment under § 12A–2(a)(1). The jury instruction that he requested would have been a correct statement of the law if he had been charged with recklessly discharging a firearm from a motor vehicle under § 12A–2(a)(2). It was not a correct statement of the law under the circumstances of this case, however, and the trial court properly refused to grant it.[1]

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

1. Art. 27, § 12A–2(b)(4), cited by appellant's counsel in support of the requested instruction, was repealed by the amendment to that statute that became effective on April 8, 1997. Prior to the amendment, the statute read, in pertinent part:

    (a) *Creation of substantial risk of death or serious physical injury; penalties.*—(1) Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine of not more than $5,000 or imprisonment for not more than 5 years or both.
    (2) Subject to the provisions of subsection (b) of this section, any person who recklessly discharges a firearm from a motor vehicle in such a manner that it creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.
    (b) *Applicable conduct.*—This section does not apply to any conduct involving:
    . . .
    (4) An individual acting in defense of a crime of violence.
    Md.Code (1957, 1996 Repl.Vol.), Art. 27, § 12A–2(b)(4).
    Appellant's counsel interpreted former § 12A–2(b)(4) as applying to both former § 12A–2(a)(1) and former § 12A–2(a)(2), and requested the instruction on that basis. Given the prefatory language of former § 12A–2(a)(2), it is not clear that the exception provided in former § 12A–2(b)(4) would apply to the charges of reckless endangerment in this case in any event. We need not detain ourselves with that inquiry, however, because the amended statute in effect at the relevant time resolved any ambiguity that may have existed.