745 A.2d 396

**Donald Anthony JONES**

v.

**STATE of Maryland.**

**No. 35, Sept. Term, 1999.**

Court of Appeals of Maryland.

Feb. 7, 2000.

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL JJ.

HARRELL, Judge.

Donald Anthony Jones, Petitioner, was convicted by a jury in the Circuit Court for Prince George's County of one count of second degree assault, Maryland Code (1957, 1996 Repl. Vol.), Article 27, § 12A, and four counts of reckless endangerment, Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.), Article 27, § 12A–2(a)(1).[1] On direct appeal, the Court of Special Appeals affirmed the judgments. *Jones v. State*, 125 Md.App. 168, 724 A.2d 738 (1999). We issued a writ of certiorari to determine whether the trial court erred by refusing to instruct the jury that self-defense applied to the reckless endangerment charges.[2] *Jones v. State*, 354 Md. 330, 731

---

1. Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.), Article 27, § 12A–2, in pertinent part, provides:

 § 12A–2. Reckless endangerment.
 (a) *Creation of substantial risk of death or serious physical injury; penalties.*—(1) Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine of not more than $5,000 or imprisonment for not more than 5 years or both.
 (2) Subject to the provisions of subsection (b) of this section, any person who recklessly discharges a firearm from a motor vehicle in such a manner that it creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.
 (b) *Applicable conduct.*—(1) Subsection (a)(1) of this section does not apply to any conduct involving:
 (i) Except as provided in § 120(a)(2) of this Article, the use of a motor vehicle as defined in § 11–135 of the Transportation Article; or
 (ii) The manufacture, production, or sale of any product or commodity.
 (2) Subsection (a)(2) of this section does not apply to any conduct involving:
 (i) A law enforcement officer or security guard in the performance of the officer's or security guard's official duty; or
 (ii) An individual acting in defense of a crime of violence.

2. Concurrently, we denied the State's conditional cross-petition questioning whether Jones has preserved for appellate review "his proposed jury instruction on reckless endangerment?" *Id.*

A.2d 439 (1999). We hold that common law self-defense is a viable defense to a charge of the statutory crime of reckless endangerment under § 12A–2(a)(1) and, consequently, we re- verse the judgments of the Circuit Court and the Court of Special Appeals as to the reckless endangerment convictions.

## I.

As our holding in this case turns on a purely legal analysis, we adopt, with slight modifications, the facts as stated by the Court of Special Appeals:

"On [6 July 1997], Carmen Reavis met several of her friends for an afternoon of fun at Adventure World [now Six Flags], a water amusement park located in Prince George's County. Among them were Tracy Barber, Gerald Goode, Walter Stokes, Reginald Davis, and William Brown. The group collected inside the park at around 1:30 p.m. and spent the next several hours together. [Petitioner] and Rashad Friday, his friend, arrived at Adventure World at around 5:30 p.m. the same day. About ten minutes later, Friday spotted Reavis, whom he did not know, and, thinking she was attractive, approached her.

"[Petitioner] testified in his own defense. He explained that Friday 'reached over to touch [Reavis'] arm to get her attention so she could hear him....' When Reavis did not respond, Friday 'touched' her arm again. This time, '[s]he responded immediately with cursing and fussing.' Friday then 'put his hands up and like okay, no problem.' [Petitioner] turned away momentarily to speak with some friends who were standing nearby; when he looked back he saw that 'approximately seven to nine guys [had] surrounded [Friday] in a confrontation.' Among them were Goode, Stokes, Brown, and Davis. [Petitioner] approached the men and said to Friday, '[l]et's walk.' He and Friday then walked together toward the front gate, 'where we had seen some safety, the only place I[had] seen security.' The group followed. At that point, [Petitioner] became scared.

"[Petitioner] further testified that as he and Friday crossed over a narrow bridge, he looked to his right and saw three of the pursuers attack Friday. He watched Friday 'go down' as his attackers 'stomp[ed] on him' and kicked him in the head and chest. Immediately thereafter, someone grabbed [Petitioner] from behind, threw him into a railing and repeatedly hit his head against it. [Petitioner] remembered being accosted by three assailants: one who stood behind him and restrained his arms and two others who alternated striking him in the head and chest. [Petitioner] explained that, '[w]hen I got one of my arms released I reached in my right pocket, pulled out a knife, opened it up' and 'cut each of them until they let me go.'

"The State's witnesses offered a very different version of events. Reavis testified that as she and her friends were walking toward the 'Mind Eraser' roller coaster, Friday grabbed her arm. She did not want to speak with him, so she continued walking. Friday approached her again a few minutes later and this time reached over and touched her breast. When Goode learned what had happened, he confronted Friday and warned him to keep his hands to himself. According to Reavis, 'it wasn't like a crowd of people, you know, around or nothing. It was just like basically us three, and it was a couple people around, but they was like a little distance back.' Friday made disparaging remarks to Reavis and she found him to be belligerent, not apologetic. Reavis heard [Petitioner] ask Goode if he wanted to 'take it outside,' but Goode refused. About five minutes later, [Petitioner] and Friday suddenly attacked Goode on the bridge. Brown, Williams, and Davis got involved in the brawl to help Goode. Reavis saw [Petitioner] 'swinging his arms wildly.'

"Stokes testified that [Petitioner] had a knife and that during the brawl, [Petitioner] stabbed him in the leg. Brown testified that during the commotion, [Petitioner] was 'swinging' and then spun around and stabbed him. When the dust cleared, Stokes, Brown, Goode, and Davis had been wounded."
*Jones*, 125 Md.App. at 170–71, 724 A.2d at 739.

The State charged Petitioner with one count each of attempted second degree murder, attempted voluntary manslaughter, first degree assault, second degree assault, and reckless endangerment for the injuries to Walter Stokes. The State also charged Petitioner with three counts of second degree assault and three counts of reckless endangerment for the injuries inflicted upon William Brown, Gerald Goode, and Reginald Davis.

Petitioner's jury trial commenced in the Circuit Court for Prince George's County on 21 January 1998. Before the trial concluded on 23 January 1998, Petitioner's trial counsel presented, in writing, to the trial judge his requested jury instructions. Among these instructions, Petitioner included the following regarding the reckless endangerment charges:

> If an individual is acting in defense of a crime of violence, he cannot be guilty of reckless endangerment. It is the State's burden to prove beyond a reasonable doubt that the defendant was not acting in defense of a crime of violence. If you are not so convinced, you must find the defendant not guilty of all counts charging reckless endangerment.

To this, Petitioner's trial counsel appended a supporting footnote which referenced Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 12A–2(b)(4). Unfortunately, Petitioner's statutory support referred to a superceded subsection of the reckless endangerment statute. Section 12A–2(b)(4), in the version cited by Petitioner and that was effective prior to 8 April 1997, provided that the prohibitions of the reckless endangerment statute generally did not apply to "an individual acting in defense of a crime of violence." [3] The record does not reflect

---

3. The version of § 12A–2 relied on by Petitioner, Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 12A–2, provided:

 § 12A–2. Reckless endangerment.
 (a) *Creation of substantial risk of death or serious physical injury; penalties.*—(1) Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine of not more than $5,000 or imprisonment for not more than 5 years or both.

that Petitioner, the State, or the court acknowledged or were aware of the superceded status of the statutory provision cited by Petitioner in support of the requested instruction. The trial judge did not give Petitioner's relevant jury instruction.[4]

The trial judge did instruct the jury that self-defense applied to all the charges against Petitioner, except the reckless endangerment counts. Following the judge's delivery of the jury instructions, Petitioner's trial counsel excepted to certain omissions from the instructions. Among the exceptions, his counsel asked the trial judge to instruct that self-defense applied to the reckless endangerment charges. Defense counsel stated, "if an individual is acting in defense of a crime of violence he cannot be guilty of reckless endangerment ... I think the jury should know that, that it's akin to self-defense." Defense counsel again referred to Maryland Code (1957, 1996 Repl.Vol.), Article 27, § 12A–2(b)(4) in support of his oral request.[5] The trial judge overruled Petitioner's exception.[6]

---

(2) Subject to the provisions of subsection (b) of this section, any person who recklessly discharges a firearm from a motor vehicle in such a manner that it creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.
(b) *Applicable conduct.*—This section does not apply to any conduct involving:
(1) The use of a motor vehicle as defined in § 11–135 of the Transportation Article;
(2) The manufacture, production, or sale of any product or commodity;
(3) A law enforcement officer or security guard in the performance of the officer's or security guard's official duty; or
(4) An individual acting in defense of a crime of violence.
(c) *More than one person endangered.*—If more than one person is endangered by the conduct of the defendant, a separate charge may be brought for each person endangered.

4. We find no statement in the record regarding the basis of the trial judge's refusal to give the written instructions submitted by Petitioner.

5. Based on the imprecision of defense counsel's articulation of the exception and the requested jury instruction, the trial judge easily could have concluded that Petitioner failed to raise the issue that self-defense, as a matter of common law, applied to the statutory charge of reckless endangerment. In this case of first impression, however, we have

As noted *supra,* the record does not reflect that either party or the judge was aware expressly that defense counsel was relying on a superceded version of § 12A–2(b),[7] as the basis of the request for the relevant jury instruction. The General Assembly amended § 12A–2, and specially subsection (b), with the new version taking effect on 8 April 1997, approximately three months before Petitioner's altercation at Adventure World. In the amended version, § 12A–2(b) no longer provides a defense for individuals acting in defense of a crime of violence to a charge under § 12A–2(a)(1), which served as the basis of the reckless endangerment charges against Petitioner.

The jury found Petitioner not guilty of attempted second degree murder, attempted voluntary manslaughter, and first degree assault. It convicted Petitioner of second degree assault against Stokes and all four counts of reckless endangerment. At sentencing, the reckless endangerment conviction as to Stokes was merged into the related assault conviction. The trial court sentenced Petitioner to ten years in prison with all but four years suspended for the second degree assault conviction as to Stokes and three concurrent four-year sentences in prison for the remaining reckless endangerment convictions.

The Court of Special Appeals affirmed the convictions. *Jones v. State,* 125 Md.App. 168, 724 A.2d 738 (1999). The intermediate appellate court determined that Petitioner's requested jury instruction was based on a superseded statutory provision and that under the correct version of the statute, the

granted certiorari on the issue and thus we have elected nonetheless to exercise our discretion to address this important issue of Maryland law. *See Conyers v. State,* 354 Md. 132, 150, 729 A.2d 910, 919 (1999).

6. The only articulated basis appearing on the record given by the trial judge for overruling Petitioner's relevant exception was the comment "I would point out again reckless endangerment does not require specific intent."

7. Unless otherwise provided, all subsequent statutory references are to Maryland Code (1957, 1996 Repl.Vol., 1999 Cum.Supp.), Article 27, § 12A–2.

self-defense provision which Petitioner relied upon ("defense of a crime of violence") applied only to a § 12A–2(a)(2) charge ("recklessly discharges a firearm from a motor vehicle"). Because the court resolved that Petitioner's jury instruction was based on an inaccurate statement of the law (as to the statute), it held that the trial judge properly refused to give the requested self-defense jury instruction as to the reckless endangerment counts premised on § 12A–2(a)(1)(general reckless endangerment conduct). *Jones,* 125 Md.App. at 177, 724 A.2d at 742. The court did not address whether common law self-defense applied to the reckless endangerment charges.

## II.

Before we turn to the substantive issue for which certiorari was granted, we put to rest the State's renewed non-preservation argument. The State asserts in its brief that, at trial, Petitioner failed to request adequately a self-defense instruction in connection with the reckless endangerment charges. The State points to a trial record excerpt wherein Petitioner's trial counsel, at one point, seemingly acknowledged, during exceptions to the instructions as given, that "self defense applies to all the counts with the exception of reckless endangerment." It also highlights Petitioner's proposed jury instruction that was premised expressly on a superceded version of the reckless endangerment statute. Relying on Maryland Rule 4–325(e),[8] the State contends that due to Petitioner's express acknowledgment that self-defense did not apply to reckless endangerment and his erroneous reliance on a superceded statutory provision, he failed to preserve for appellate review the issue of whether common law self-defense is applicable to a charge of reckless endangerment.

---

8. Md. Rule 4–325(e) states, in pertinent part:

> *Objection.* No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.

We decline to entertain the State's non-preservation contention further. The State's analysis is a reiteration of the issue and argument advanced in its conditional cross-petition for writ of certiorari which, as previously stated, we denied. Under our certiorari process, this Court will only consider matters on appeal raised in a petition for writ of certiorari that we have granted. *See Walston v. Sun Cab Co.,* 267 Md. 559, 568, 298 A.2d 391, 397 (1973). The certiorari process serves an important function in Maryland's system of jurisprudence. It allows this Court to select and review cases that we deem to be "desirable and in the public interest." Maryland Code (1974, 1998 Repl.Vol.), Cts. and Jud. Proc. § 12–305; *See also Walston,* 267 Md. at 565, 298 A.2d at 395. In exercising this broad discretion, we limit the issues that we elect to review by denying petitions for certiorari in whole or in part, so that we may deal directly with the issues selected. *See Streater v. State,* 352 Md. 800, 802–03, n. 1, 724 A.2d 111, 127, n. 1 (1999). When this Court denies review of an issue in a petition for certiorari or a conditional cross-petition, a party ordinarily is foreclosed from rearguing that issue before us. *See Streater,* 352 Md. at 805–06, n. 4, 724 A.2d at 127, n. 4; *Dempsey v. State,* 277 Md. 134, 143, 355 A.2d 455, 459 (1976); *Walston,* 267 Md. at 565, 298 A.2d at 395. In *Dempsey,* we explained the effect of an order from this Court limiting certiorari, by stating:

> [w]here this Court's order granting certiorari limits the issues to be considered, no additional questions will ordinarily be dealt with even if such additional questions were raised in the petition or in a cross-petition.

*Dempsey,* 277 Md. at 143, 355 A.2d at 459 (citations omitted).

Recently in *Streater v. State,* 352 Md. 800, 724 A.2d 111 (1999), we dealt with an analogous situation to the present case. In *Streater,* the trial court admitted in evidence a protective order which contained factual findings by a district court judge regarding prior criminal acts committed by the petitioner, Streater. Streater's counsel objected generally to the admission of the protective order, but failed to raise a specific objection to the admission of the evidence of prior

criminal acts. Despite Streater's apparent failure to preserve the specific evidentiary issue for which appellate review was sought subsequently, we rejected a waiver argument previously presented in the Respondent State's denied conditional cross-petition for writ of certiorari and renewed in its brief. We explained that

> "[g]iven our denial of that petition for certiorari, we must assume that Petitioner's objection was properly preserved ... the dissent's protestations are more properly directed at our denial of certiorari on the preservation issue ... [r]aising contentions concerning an issue on which we expressly denied certiorari risks undermining our certiorari process."

*Id.* at 805–06, n. 4, 724 A.2d at 128, n. 4.

■ In the case at hand, the State's waiver/non-preservation argument was settled when we denied certiorari on that question. We shall not undermine the appellate review process by digressing from our chosen course. *Id.*

### III.

■ As we explained, the Court of Special Appeals affirmed Petitioner's convictions. The court's holding focused on its interpretation of the proper version of § 12A–2. The court reasoned that:

> As the language of § 12A–2(b)(2)(ii) makes plain, an individual who is acting in defense of a crime of violence and who engages in the conduct specified in § 12A–2(a)(2), i.e., 'recklessly discharg[ing] a firearm from a motor vehicle ...' is not committing the crime of reckless endangerment. That exception is narrowly written, however, and does not apply to the more general conduct set forth in § 12A–2(a)(2)[sic], i.e., 'recklessly engag[ing] in conduct that creates a substantial risk of death or serious physical injury to another person ...'
>
> In this case, appellant was charged with reckless endangerment under § 12A–2(a)(1). The jury instruction that he requested would have been a correct statement of the law if he had been charged with recklessly discharging a firearm

from a motor vehicle under § 12A–2(a)(2). It was not a correct statement of the law under the circumstances of this case, however, and the trial court properly refused to grant it.

*Jones,* 125 Md.App. at 177, 724 A.2d at 742. We agree with the Court's conclusion to the extent that it resolves the question of whether Petitioner was entitled to a self-defense jury instruction based on § 12A(b)(2)(ii).[9] This, however, does not end our inquiry.

Petitioner contends that he is entitled to a self-defense instruction under the common law. In support of this alternate theory Petitioner posits that Maryland Code (1957, 1996 Repl.Vol.), Article 27 § 12A–3 recognizes his right to assert common law self-defense as a defense to the statutory reckless endangerment charges under § 12A–2(a)(1). Section 12A–3, entitled "Defenses," states:

A person charged with an offense under this subheading ["Assault," which includes reckless endangerment] is entitled to assert any judicially recognized defense.

Therefore, Petitioner reasons that he should be permitted to assert self-defense as "a judicially recognized defense." We agree.

## A.

■■ To completely review Petitioner's argument we begin with an examination of the common law doctrine of self-defense in Maryland. When facts are adduced establishing perfect self-defense to a charge of criminal homicide or as-

---

**9.** Although we do not base our holding in the present case on an interpretation of § 12A–2, we note that one could argue with considerable force that a plain meaning interpretation and application of current § 12A–2 (a)(2) and (b)(2)(ii) yields an absurd result. It is difficult to comprehend why the General Assembly would permit a statutory defense to a reckless endangerment charge when an individual discharges a firearm from a motor vehicle "in defense of a crime of violence," but withdraw the availability of such a defense to that same individual if he or she steps out of the car before discharging the weapon. A review of the legislative history of the 1997 Md. Laws, ch. 32, § 1, is unenlightening as to the underpinning for this curious distinction.

sault, the defendant's actions are said to be justifiable or excusable and the direct result is the acquittal of the defendant. *See Dykes v. State,* 319 Md. 206, 210–11, 571 A.2d 1251, 1254 (1990); *State v. Faulkner,* 301 Md. 482, 485, 483 A.2d 759, 764 (1984). *See also Tichnell v. State,* 287 Md. 695, 718, 415 A.2d 830, 842 (1980). Complete, or perfect, self-defense requires that:

(1) the defendant actually believed that he or she was in immediate or imminent danger of bodily harm;

(2) the defendant's belief was reasonable;

(3) the defendant must not have been the aggressor or provoked the conflict; and

(4) the defendant used no more force than was reasonably necessary to defend himself or herself in light of the threatened or actual harm.

*See State v. Martin,* 329 Md. 351, 357, 619 A.2d 992, 995 (1993); *Dykes,* 319 Md. at 211, 571 A.2d at 1254; *Faulkner,* 301 Md. at 485–86, 483 A.2d at 764; *Tichnell v. State,* 287 Md. at 718, 415 A.2d at 842 (1980); *Guerriero v. State,* 213 Md. 545, 549, 132 A.2d 466, 467 (1957).

 The vast majority of our appellate opinions developing the law of self-defense have been in the context of the proper application of perfect and imperfect self-defense in murder cases. Imperfect self-defense differs from perfect self-defense in its effect in that the establishment of imperfect self-defense does not result in an acquittal. *Martin,* 329 Md. at 358, 619 A.2d at 996. If established, imperfect self-defense negates the element of malice in a charge of murder and the defendant may be convicted of the lesser crime of voluntary manslaughter. *Faulkner,* 301 Md. at 500, 483 A.2d at 769. Imperfect self-defense results when a fact-finder concludes that a defendant committed criminal homicide in an honest, but unreasonable belief that he or she was threatened with death or serious bodily harm. *Id.* The doctrine of imperfect self-defense applies only to "criminal homicide and its shadow forms, such as attempted murder." *Richmond v. State,* 330 Md. 223, 233, 623 A.2d 630, 634–35 (1993) (citations omitted).

It has no applicability to other assaultive crimes. *Bryant v. State*, 83 Md.App. 237, 245, 574 A.2d 29, 33 (1990). While the complexities of perfect and imperfect self-defense are not at issue in this case, these cases are instructional.

In *Corbin v. State*, 94 Md.App. 21, 614 A.2d 1329 (1992), the Court of Special Appeals dealt with the question of whether a defendant was entitled to perfect and imperfect self-defense instructions in a group attack context. In *Corbin*, the defendant stabbed the victim during a dispute inside of a car. After the initial attack ended, another person intervened and initiated a second confrontation with the defendant. The defendant testified that the victim joined in the second confrontation and that during the second attack the defendant stabbed the victim for a second time. The victim died from the second stab wound. The trial court denied the defendant's request for a self-defense instruction because it found that both incidents constituted one continuing affray and that the defendant was the initial aggressor in the incident. *Corbin*, 94 Md.App. at 26–27, 614 A.2d at 1332. The defendant was convicted of second-degree murder.

The court reversed the murder conviction. The court held that when a defendant offers some evidence to show that the second attack was an independent confrontation in which the defendant was not the aggressor, the defendant was entitled to jury instructions regarding the law of perfect and imperfect self-defense. *Id.* at 31–32, 614 A.2d at 1333. In reaching its conclusion the court stated:

'[W]here several persons are acting together aggressively toward another, and, because of their acts or the acts of either of them, it reasonably appears to him that his life is in danger, or he is in danger of great bodily harm, he may slay any of such persons or all of them, if it reasonably appears to him to be necessary so to do to protect himself from death or great bodily harm. And when a person is called upon to act under such circumstances, he is not bound to decide as to which one of the persons made the actual hostile demonstrations and refrain from injuring the others.'

*Id.* at 28–29, 614 A.2d at 1332 (footnotes omitted)(quoting Francis Wharton, The Law of Homicide § 240 at 396–97 (Frank H. Bowlby ed., 3d ed.1907)). The court added that:

'Where, in a trial for murder, there is competent evidence tending to show that the accused believed, and had reasonable grounds to believe, that he was in danger of losing his life or suffering great bodily harm at the hands of several assailants acting together, he may defend against any or all of said assailants, and it is reversible error for the trial court to refuse to instruct the jury to that effect.'

*Id.* at 30, 614 A.2d at 1333. (citations omitted)(quoting *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854, 855 (1945)).

Aside from its application to a charge of murder, Maryland appellate courts have applied common law self-defense to other assaultive crimes. *See Bussie v. State,* 115 Md.App. 324, 693 A.2d 49 (1997); *Bryant v. State,* 83 Md.App. 237, 574 A.2d 29 (1990). *Bryant* was the result of a brutal and bloody altercation between two men. The facts relating to which party started the fight were in dispute, but when the fight ended one party was hospitalized with forty stab wounds. The defendant was charged and convicted of attempted first degree murder, statutory maiming, assault with intent to disable, and assault and battery. *See Bryant,* 83 Md.App. at 239, 574 A.2d at 30. The trial judge gave a jury instruction on perfect and imperfect self-defense as it related to the attempted murder charge, but the judge refused to instruct the jury on self-defense as a defense to the maiming or assault charges. The defendant appealed on the basis of the trial judge's refusal to instruct and the Court of Special Appeals reversed, concluding that "the simple and frequently neglected truth is that the defense of self-defense applies to assaultive crimes generally." *Id.* at 245, 574 A.2d at 33. In support of its holding, the court explained the applicability of self-defense to all assaultive crimes:

"[i]t is only just that one who is unlawfully attacked by another, and who has no opportunity to resort to the law for his defense, should be able to take reasonable steps to defend himself from physical harm. When the steps he

takes are reasonable, he has a complete defense to such crimes against the person as murder and manslaughter, attempted murder, assault and battery and the aggravated forms of assault and battery. His intentional infliction of (or, if he misses, his attempt to inflict) physical harm upon the other, or his threat to inflict such harm, is said to be justified when he acts in proper self-defense, so that he is not guilty of any crime."

*Id.* at 246, 574 A.2d at 33 (quoting W. Lafave & A. Scott, Criminal Law § 5.7 (2d ed.1986)) (emphasis in original). The court added that because self-defense could exculpate the defendant from the underlying assault charges, the necessary implication was that self-defense could be a complete defense to the aggravating forms of assault. *See id.* at 246, 574 A.2d at 34.

With respect to the statutory maiming charge, the court reasoned that if the victim's maiming injuries were caused by a necessary self-defense to an attack which threatened the defendant with death or serious bodily injury, then the trial judge should have given a self-defense instruction to maiming charges. *Id. See also Bussie v. State,* 115 Md.App. 324, 693 A.2d 49 (1997)(self-defense instruction is appropriate to a charge of assault with intent to disable).

 In sum, we think it clear that when an individual reacts, in an honest and reasonable belief, to a threat of imminent danger that may cause his or her death or serious bodily harm and uses no more force than the situation requires, that individual is legally exonerated from the criminal liability his or her actions may create, regardless of whether the State charges him or her with one of the various types of criminal homicide or assault under Maryland common law. *See Dykes v. State,* 319 Md. 206, 211, 571 A.2d 1251, 1254 (1990); *State v. Faulkner,* 301 Md. 482, 485, 483 A.2d 759, 761 (1984); *Redcross v. State,* 121 Md.App. 320, 327, 708 A.2d 1154, 1157 (1998); *Bussie,* 115 Md.App. at 346, 693 A.2d at 60. *Bryant,* 83 Md.App. at 245, 574 A.2d at 33. With the previously declared applicability of self-defense in mind, we next

turn to examine the body of law dealing with the statutory crime of reckless endangerment.

## B.

The crime of reckless endangerment, not recognized as a distinct crime at common law, is codified in Maryland Code (1957, 1996 Repl.Vol., 1999 Cum.Supp.), Article 27 § 12A–2. The statute provides, in pertinent part:

> (a) *Creation of substantial risk of death or serious physical injury; penalties.*
>
> —(1) Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine of not more than $5,000 or imprisonment for not more than 5 years or both.

Section 12A–2 is a relatively new addition to the arsenal of criminal statutes used to deter criminal conduct. In 1989, the General Assembly enacted the statute with a clear policy goal in mind. It focused on deterring reckless behavior that posed a risk of serious injury or death before the injury or death occurred. *See State v. Albrecht,* 336 Md. 475, 500–01, 649 A.2d 336, 348 (1994)(citing *Minor v. State,* 326 Md. 436, 442, 605 A.2d 138, 141 (1992)). It was clear to us in *Minor* that the underlying purpose of the statute was aimed toward deterrence. We explained that:

> it is readily evident from the plain language of [the reckless endangerment statute] that it was enacted to punish, as criminal, reckless conduct which created a substantial risk of death or serious physical injury to another person. It is the reckless conduct and not the harm caused by the conduct, if any, which the statute was intended to criminalize.

*Minor,* 326 Md. at 441, 605 A.2d at 141. *See also Williams v. State,* 100 Md.App. 468, 481, 641 A.2d 990, 996 (1994)(reckless endangerment is directed at inhibiting criminal conduct before it goes too far).

 The elements of a prima facie case of reckless endangerment are: 1) that the defendant engaged in conduct that created a substantial risk of death or serious physical injury to another; 2) that a reasonable person would not have engaged in that conduct; and 3) that the defendant acted recklessly. *See Albrecht*, 336 Md. at 501, 649 A.2d at 348–49. The predominant issue in the Maryland cases dealing with the crime of reckless endangerment has been the question of defining the requisite mental state of recklessness required to sustain a reckless endangerment conviction.

In *Minor v. State*, 326 Md. 436, 605 A.2d 138 (1992), we were called upon to determine whether a defendant who handed his intoxicated brother a loaded shotgun, dared him to play "Russian Roulette," and watched his brother shoot himself had the required mental state to violate the reckless endangerment statute. The defendant argued that he did not act recklessly because he subjectively believed that his brother was not going to pull the trigger of the gun. He urged us to adopt the Model Penal Code definition of "reckless" which defined that mental state as a conscious disregard of a substantial and unjustifiable risk. *Minor*, 326 Md. at 440, 605 A.2d at 140 (*citing* Model Penal Code, § 211.2). We rejected the defendant's argument, instead opting for an objective definition. We stated that:

> guilt under the statute does not depend upon whether the accused intended that his reckless conduct create a substantial risk of death or serious injury to another. The test is whether the appellant's misconduct, viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe, and thereby create the substantial risk that the statute was designed to punish.

*Id.* at 443, 605 A.2d at 141.

We later applied this test in *Albrecht*, 336 Md. at 501, 649 A.2d at 348–49. The defendant in *Albrecht* was a Montgomery County police officer. In an arrest confrontation with a group of suspects, the police officer aimed his self-customized shot-

gun at a young woman and unintentionally pulled the trigger. The woman was killed instantly. The police officer was charged and convicted of involuntary manslaughter and multiple counts of reckless endangerment. One issue in our inquiry was whether the police officer's conduct "constituted a gross and wanton deviation from reasonable conduct" such that would support the reckless endangerment convictions. *Albrecht*, 336 Md. at 487–88, 649 A.2d at 341. We reaffirmed our holding in *Minor*, explaining that the trier of fact is to measure the accused's conduct against that of "an ordinary prudent citizen similarly situated." [10] We ultimately held, under the objective standard, that there was sufficient evidence to uphold the trial court's convictions.

From the foregoing, we glean two points that are of particular significance to the case at hand. First, it is clear from our case law that the legislature enacted § 12A–2 to deter or inhibit behavior. The statute criminalizes reckless behavior that creates a substantial risk of death or serious bodily harm. Second, to evaluate whether the behavior is reckless under § 12A–2, the trier of fact must evaluate the defendant's conduct from the standpoint of an ordinary, law-abiding citizen under similar circumstances.

With these points in mind, we come to the ultimate inquiry in this case: whether self-defense is appropriate to be judicially recognized as a defense to a charge of general reckless endangerment. For reasons we shall explain below, we hold that when a defendant is charged with the statutory crime of reckless endangerment under § 12A–2(a)(1) and evidence is presented to generate an issue of common law perfect self-defense, the defendant is entitled to have the jury instructed regarding the application of self-defense to the

---

**10.** Because the defendant in *Albrecht* was a police officer, we adjusted the recklessness standard to that of a ordinary prudent police officer under similar circumstances. *Albrecht*, 336 Md. at 501, 649 A.2d at 349.

charge of reckless endangerment, assuming the other necessary instructional elements are in place.[11]

In murder and assault contexts, a person who protects himself or herself from an imminent attack is excused from the criminal liability that his or her defense may create. *Dykes v. State*, 319 Md. 206, 210–11, 571 A.2d 1251, 1254 (1990); *Bussie*, 115 Md.App. at 347, 693 A.2d at 60; *Corbin*, 94 Md.App. at 28–29, 614 A.2d at 1332; *Bryant*, 83 Md.App. at 246, 574 A.2d at 33. Although we do not encourage people to defend themselves when they have the time and the ability to get help from a law enforcement authority or retreat to safety, our law does not dictate that a person stand idly by and become a victim of assaultive aggression. *Bryant*, 83 Md.App. at 246, 574 A.2d at 33.

In this case, the State charged Petitioner with attempted second degree murder, attempted voluntary manslaughter, first degree assault, four counts of second degree assault, and four counts of reckless endangerment. The charges stemmed from the series of actions taken by Petitioner at Adventure World. Petitioner's evidence generated the issue of self-defense, but the trial judge instructed the jury on self-defense only as it related to the murder and assault charges. We cannot reconcile the conflict between potentially excusing conduct based on common law self-defense to charges of attempted murder and assault while not making available a similar defense to the statutory reckless endangerment charges. Therefore, we shall recognize, pursuant to § 12A–3, the appli-

---

**11.** Maryland Rule 4–325 addresses the procedural guidelines governing instructions to the jury. Based on this rule, we have set forth the threshold requirements for a party's entitlement to a jury instruction as follows:

> (1) the requested instruction must be a correct statement of the law;
> (2) the requested instruction is applicable under the facts of the case; and
> (3) the content of the requested instruction was not fairly covered by the other instructions given by the court.

*See Patterson v. State*, 356 Md. 677, 683–84, 741 A.2d 1119, 1122 (1999)(quoting *Ware v. State*, 348 Md. 19, 58, 702 A.2d 699, 718 (1997)).

cability of common law self-defense to the statutory crime of reckless endangerment under § 12A–2(a)(1).

In every reckless endangerment case where the fact finder believes the evidence generating self-defense, the fact finder is foreclosed from finding the three elements of reckless endangerment. A required element of reckless endangerment is that a reasonable person would not have engaged in the conduct at issue in the case. *See Minor,* 326 Md. at 443, 605 A.2d at 141. In every case where a defendant shows that his or her actions were taken in an honest and reasonable belief that he or she was in imminent danger of serious bodily harm from an assaultive attack, and used no more force than necessary in light of the attack, as matter of logic, it cannot be said that the defendant engaged in conduct that a reasonable person would have abstained from under the circumstances. As the elements of self-defense necessarily negate a required element of reckless endangerment, a self-defense instruction, if generated, is relevant to a charge of reckless endangerment.

Our holding today comports with the policy underlying § 12A–2. The General Assembly obviously enacted the reckless endangerment statute to deter reckless conduct. *Minor,* 85 Md.App. at 314, 583 A.2d at 1106. The test that we use to determine if a defendant's conduct was reckless is whether the conduct, viewed objectively, constitutes a gross departure from the type of conduct that an law-abiding citizen would observe under similar circumstances. *Albrecht,* 336 Md. at 501, 649 A.2d at 348. Viewed objectively, an act taken in self-preservation, that otherwise satisfies all the elements of self-defense, is not a gross departure from the conduct of a law-abiding citizen under the circumstances. Rather, reasonable steps taken to avoid death or serious injury to one's self are justifiable under our law. *Dykes,* 319 Md. at 210–11, 571 A.2d at 1254; *Faulkner,* 301 Md. at 485, 483 A.2d at 761. The legislature sought to deter reckless behavior. It did not intend expressly to abrogate the common law right of a person to defend himself or herself when faced with an imminent, assaultive attack.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENTS OF THE Circuit Court FOR PRINCE GEORGE'S COUNTY AS TO THE RECKLESS ENDANGERMENT CONVICTIONS AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL ON THE RECKLESS ENDANGERMENT COUNTS ONLY; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.